## ROBERT EUGENE WATSON *v.* STATE OF MARYLAND

[No. 234, September Term, 1972.]

*Decided March 9, 1973.*

264

The cause was argued before ORTH, C. J., and MORTON, THOMPSON and DAVIDSON, JJ.

*John W. Sause, Jr.,* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard R. Cooper, State's Attorney for Kent County, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Gerard E. Mitchell, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was indicted by the Grand Jury of Montgomery County for murder, rape, assault with intent to rape, robbery and assault with intent to rob. The case was removed to Kent County and after two and one-half days of trial, during which seventeen witnesses were called and thirty-three exhibits were introduced, the

State concluded its case. Appellant filed a motion for a judgment of acquittal which was denied by the trial judge and the court then recessed for lunch.

Immediately following the luncheon recess, the attorneys for appellant, who were privately retained, approached the bench and requested the trial judge to conduct a re-arraignment for the purpose of permitting the appellant to change his pleas. After administering the accepted panoply of questions, appellant was permitted to plead guilty to first degree murder and rape and the State nol-prossed the remaining charges. After denying a request by appellant's counsel for a pre-sentence investigation, the trial judge announced he would hold a sentencing hearing approximately one month thereafter.

Immediately prior to the sentencing hearing, appellant, in proper person, addressed the following communication to the trial judge:

"I wish to file a motion to withdraw my plea of guilty because I am not guilty of these charges. I plead guilty due to the advice of my lawyers so that I might escape the death penalty. My lawyers never advised me of the fact that the death penalty would soon be brought up for abolishment. I wish to seek new attorneys to defend this case."

At the sentencing hearing on March 16, 1972, the following occurred:

"THE COURT: I suppose defense counsel is aware of the fact that Mr. Watson has sent the Court what might be considered a motion in proper person in which he says he wishes to withdraw his plea of guilty * * *.

I suppose the Court should inquire of Mr. Watson at this time whether or not he is charging that his counsel were incompetent, and I suppose it would be proper to ask defense coun-

sel to respond to this at this time since there appears to be an allegation of incompetency.

Mr. Watson, would you please stand up. The Court has received your motion. Is there anything- else you want to say in support of your motion?

THE DEFENDANT WATSON: Only that I would appreciate it very much if you would give me time to seek new counsel in this case.

THE COURT: Do you recall that the Court in taking your guilty plea used a written form and asked you certain questions and filled in certain answers after which you and your counsel conferred and you said you understood them and then you signed the transcript yourself, your counsel signed and then the Court signed the certificate? Is there anything you want to say about that procedure for the record? I will be happy to have you say it, that is, as to whether you believe that counsel and the Court in some way failed to properly advise you so that you could understand what you were doing and act intelligently. What do you have to say about it?

\* \* \*

THE DEFENDANT WATSON: Yes, sir, but like I stated in the letter, only to escape the death penalty. My lawyers felt they wouldn't be able to win their case. After listening to defense counsel, there was nothing else for me to do."

After additional colloquy with Watson and his attorneys the court proceeded to deny appellant's motion.

After making certain clarifying remarks concerning his reasons for the punishment about to be imposed, the trial judge announced:

"Mr. Clerk, you can say that in the judgment and sentence of this Court with respect to the

first count of the indictment [murder] that Robert Eugene Watson, as penalty for his offense, shall be committed to the Division of Corrections for the remainder of his natural life. With respect to the second count of the indictment [rape], it is the judgment and sentence of this Court that Robert Eugene Watson, as punishment for his offense, shall be committed to the Division of Corrections for the remainder of his natural life. This sentence is to run consecutive to the sentence imposed with respect to the first count of the indictment. You may say that this sentence is suspended and he is placed on probation, said probation to begin if and when he is released on parole with respect to the sentence imposed in the first count, and that a condition of his probation is that he shall pay to or on behalf of David Blum twenty per cent of his earnings and that he shall pay to or on behalf of Samuel Blum [sons of victim] twenty per cent of his earnings. The period of probation shall be indeterminate and subject to the further order of the Court."

It is in this factual posture that appellant asserts (1) that Maryland Rule 722 required the trial judge to permit the withdrawal of the guilty pleas "in the interest of justice"; and (2) that the "Constitution required that appellant be allowed to change his plea."

Maryland Rule 722 provides: "The court may strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action necessary in the interest of justice." At the outset, appellant seeks to draw a distinction "between attempted changes of plea before sentence and after sentence", arguing that a motion to withdraw a guilty plea filed prior to sentence, as here, should be more freely granted. Assuming there is merit in appellant's suggestion and assuming, *arguendo*, that an accused may, under proper circumstances, seek to with-

draw a guilty plea after imposition of sentence (*Lifshutz v. State*, 236 Md. 428), we think it is crystal clear that, basically, the granting of a motion to withdraw a guilty plea lies in the sound discretion of the trial judge, and unless there is a manifest abuse of that discretion, the denial of the motion will not be disturbed by the appellate courts. See *Palacorolle v. State*, 239 Md. 416; *Lifshutz v. State, supra; Cohen v. State*, 235 Md. 62; *White v. State*, 227 Md. 615; *Taylor v. State*, 7 Md. App. 558; *Cashdan v. Warden*, 5 Md. App. 402; *Charles v. State*, 1 Md. App. 222.

In the case at bar it is urged that the trial judge did abuse his discretion. It is argued that the appellant entered his pleas of guilty under the mistaken belief that he could be sentenced to death if found guilty after trial; that had he known or been advised by his lawyers that "the death penalty would soon be brought up for abolishment" he would not have pleaded guilty.

The record indicates that appellant entered his pleas on February 16, 1972. His present counsel (District Public Defender) now points to the fact that he "may have been prescient of the Supreme Court's rulings in *Furman v. Georgia*", 408 U. S. 238, decided on June 29, 1972. In *Bartholomey v. State*, 267 Md. 175, the Court of Appeals, in an opinion by Chief Judge Murphy, announced:

> "We entertain not the slightest doubt that the imposition of the death sentence under any of the presently existing discretionary statutes of Maryland which authorize, but do not require, that penalty is unconstitutional under *Furman* as violative of the Eighth and Fourteenth Amendments to the federal constitution. [footnote omitted]. In other words, we think the net result of the holding in *Furman* is that the death penalty is unconstitutional when its imposition is not mandatory."

Thus, it is certainly true that at the time appellant entered his guilty pleas the death penalty in Maryland

was "up for abolishment", but we cannot agree that this circumstance, although allegedly unknown to appellant at the time he entered his guilty pleas, compels a finding that his pleas were not entered "voluntarily and with an intelligent understanding" within the concept of those terms as defined in *Holloway v. State,* 8 Md. App. 618. While appellant concedes that the recent decision of the Supreme Court in *Brady v. United States,* 397 U. S. 742, "has superficial factual similarities to the case at bar", we think that similarity is not superficial but is such as to be dispositive of appellant's contention that the federal constitution and Maryland Rule 722 required a granting of his motion to withdraw his guilty pleas.

In *Brady,* the accused was charged under a federal statute (18 U.S.C. § 1201 (a)) with the crime of kidnapping and faced the death sentence if found guilty after trial. He changed his plea from not guilty to guilty prior to trial and was sentenced to a term of thirty years. Subsequently, the death penalty provision of the federal statute was declared unconstitutional in *United States v. Jackson,* 390 U. S. 570. Brady then sought to strike out his guilty plea and the judgment entered thereon upon the ground that the death penalty clause of the statute operated to coerce his guilty plea and "but for" the possibility of the imposition of the death penalty, he would have allowed his not guilty plea to stand. Otherwise stated, he contended, as does the appellant here, that had he known the death penalty provision of the statute would have been eliminated by judicial fiat, he would have pleaded not guilty and gone to trial. The Supreme Court rejected this contention, holding (at 757): "We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that * * * the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."

We cannot subscribe to appellant's argument that his pleas should now be stricken because he "did not have an intelligent understanding of the true nature of the penalties which he faced upon conviction."

As Justice White said in *Brady* at 756-757:

> "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. * * * The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. *Von Moltke v. Gillies*, 332 U. S. 708, 92 L. Ed. 309, 68 S. Ct. 376 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

There is no suggestion here of misrepresentation or other impermissible conduct by State agents, and the record clearly shows that the trial judge painstakingly advised appellant of the constitutional rights he was foregoing and the possible consequences flowing from his guilty pleas. Moreover, the pleas were entered only after the State had concluded its case against the appellant and only after the appellant, through his counsel, had sought a re-arraignment. It is significant that the trial judge,

in rejecting appellant's subsequent motion to withdraw the guilty pleas made the following appraisal:

"This tender of a guilty plea came at the conclusion of the State's case. The State had, in the opinion of the Court, proven its case beyond a reasonable doubt and had it been submitted on those facts to the Court, there would have been no question as to the verdict of the Court. Therefore, the Court can only conclude that, likewise, the defendant and certainly his attorneys in evaluating the State's case should have been led to the same conclusion, and undoubtedly the defendant, and his attorneys in advising him, were motivated to have the defendant appear in a light most favorable to him at the time of sentencing, if there were a guilty verdict, in fact, returned by the jury or if it had gone on to a trial conclusion." [1]

Considering all the relevant circumstances surrounding the entry of appellant's guilty pleas, we find nothing in the record to impeach their voluntariness or to demonstrate that they were entered with a lack of understanding of the nature of the offenses and the possible consequences of their entry. See *Holloway, supra,* at 620. Accordingly, we find no abuse by the trial judge of his discretion to reject the motion to withdraw the guilty pleas.

The appellant, as a part of his *pro se* motion to change his pleas, requested an opportunity "to seek new attor-

---

1. The autopsy indicated that the victim's death resulted from strangulation. In addition, there was extensive hemorrhaging, approximately six stab wounds in the neck, marks on the chest, bruises on both thighs and on the lower legs, tearing of superficial layers of skin, and mobile sperm in the victim's vaginal area. There was also evidence indicating that 164 U. S. Silver Certificates had been recovered from appellant's pocket and that 175 U. S. Silver Certificates were missing from a box in the victim's home; latent fingerprints of the victim were found on money recovered from appellant; and microscopic comparisons supported an expert's conclusion that the appellant's clothing was in contact with the victim's clothing and bedding.

neys to defend this case", asserting that "the lawyers never advised me of the fact that the death penalty will soon be brought up for abolishment." In this appeal appellant contends it was error to deny him "the assistance of counsel at his sentencing."

While it is not clear that there was any such denial since the record shows that appellant's attorneys were present at the sentencing hearing and submitted a memorandum on his behalf in connection with the sentencing, it is apparent that the appellant, at that point, was dissatisfied with their representation. In substance, he appears to have been charging that he was denied the effective assistance of counsel because of the inadequacy of his attorneys. Since this was a bald allegation, not explored by the court and the attorneys not afforded an opportunity to defend the adequacy of their representation, the issue is not properly before us. Md. Rule 1085; *Jordan v. State,* 2 Md. App. 415. The appellant, of course, remains free to pursue the issue through appropriate post conviction procedures.

Finally, appellant contends that the conditions of probation imposed by the trial judge relative to his suspension of the execution of the second life sentence were unauthorized and illegal. As indicated earlier in this opinion, the trial judge announced as a condition of probation that appellant should pay forty percent of his earnings to or on behalf of the minor children of the victim and further provided that "the period of probation shall be indeterminate and subject to the further order of the Court."

At the outset there can be no question (and the State makes no contrary contention) that the "validity of conditions of probation as set forth in the original sentence may be determined on appeal from the original judgment * * *." See *Finnegan v. State,* 4 Md. App. 396, 403.

As Judge Powers pointed out in *Bartlett v. State,* 15 Md. App. 234, 238:

"The power of the courts to suspend sentences imposed upon persons convicted of crime,

and to 'make such orders and impose such terms as to costs, recognizance for appearance, or matters relating to the residence or conduct of the convicts as may be deemed proper' was for many years derived from the statute which is now Code, Art. 27, § 639. Broader power was given in Code, Art. 27, § 641, first enacted with limited application in 1955, and in 1957 made to apply to all courts of general criminal jurisdiction."

That Section provides in part:

"The circuit courts of the several counties in this State and the Criminal Court of Baltimore, * * * after a plea of guilty or nolo contendere, * * * are empowered, during the term of court in which such consent, conviction or plea is had, to:

(1) Suspend the imposition of sentence; or
(2) Place such person on probation without finding a verdict; and
(3) Make such conditions of suspension of sentence and probation as the court may deem proper."

By Chapter 480 of the *Laws of 1970,* the General Assembly enacted an additional Section 641A of Md. Code, Art. 27, which provides, in part:

"Upon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the courts deem proper. The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of five years."

It can readily be seen that the legislature has continued to repose in the trial courts authority "to suspend the imposition or execution of sentence and place defendants on probation upon such terms and conditions as the courts deem proper." We need not, however, for the purposes of this case, endeavor to reconcile or assess the terms of § 641 and § 641A with those of § 639 for we are of the opinion that the conditions of probation imposed by the trial judge exceeded the authority reposed in him under any of these statutes.

Whatever latitude the statutes repose in the trial judge, it remains, of course, fundamental that conditions of probation must be reasonable and have a rational basis. They must not be the product of arbitrariness or capriciousness. Moreover, the conditions imposed must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement. See *Finnegan v. State, supra.* We think the conditions imposed by the trial judge here failed to meet these requirements.

If the conditions of probation attendant the second life sentence were permitted to stand as issued, the Board of Parole, when considering appellant's eligibility for parole under the first life sentence (see Md. Code, Art. 41, § 122 (b)), would be confronted with a prisoner who was under a mandate to serve a second life sentence unless he turned over to the sons of the victim forty percent of any monies he earned after his parole and release under his first sentence. How the figure of forty percent was arrived at by the trial judge is unexplained. What relationship it bears to any appropriate compensation the sons might be entitled to recover in a civil action is totally obscure and without any expressed factual basis. What role the provision of the Criminal Injuries Compensation Act, Md. Code, Art. 26A, §§ 1-17, would play is uncertain. What constitutes earnings is not defined; whether they are gross or net, how they are come by, who is to determine what constitutes earnings, over what

period of time they are to be paid, and infinite other problems are left unresolved. Moreover, the period of probation under the order is indeterminate and the period of time during which the payments are to be made is limitless. While it is true that the conditions of probation are subject to the "further order of the court", there is no showing what the trial judge envisioned by "further order." Arguably, the condition imposed is akin to subjecting the appellant to a state of peonage, a status which has been proclaimed in our Constitution of Maryland as forever abolished. (Art. III, Sec. 38). Conceivably, the conditions imposed constitute an unwarranted invasion into and encroachment upon the duties and functions of the Board of Parole (Md. Code, Art. 41, §§ 107-117).

While the motives of the trial judge may have been lofty and salutary, we think that his method of achieving them was well beyond the scope of his authority as a criminal trial judge. Under the circumstances, this Court has no alternative than to set aside the sentence for rape as imposed and remand the case for the imposition of a proper sentence.

> *Judgments affirmed.*
> *Sentence for rape vacated*
> *and case remanded for*
> *proper sentence.*