61 A.3d 87

**James LAMBERT, Jr.**

v.

**STATE of Maryland.**

**No. 2542, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Feb. 27, 2013.

Philip H. Armstrong (Armstrong & Cheris, Chartered, on the brief) Rockville, MD, for appellant.

Susannah E. Prucka (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: ZARNOCH, MATRICCIANI and J. FREDERICK SHARER, (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On November 19, 2009, appellant, James Lambert, was indicted in the Circuit Court for Montgomery County on charges of first- and second-degree assault under, respectively, §§ 3–202 and 3–203 of the Criminal Law Article, Md.Code (2002, 2009 Suppl.). On March 24, 2010, appellant pleaded

guilty to assault in the second degree.[1] On April 15, 2010, the court sentenced defendant to three years of confinement, all suspended, and placed appellant on three years of supervised probation.

On July 2, 2010, appellant filed a motion for reconsideration of his sentence, which the court denied on August 10, 2010. No appeal was noted.

On September 8, 2010, appellant was charged with violating his probation. On October 15, 2010, appellant moved under Rule 4–345 to correct his sentence as illegal. On November 22, 2010, the court heard both matters, denied appellant's motion to correct his sentence, and found him in violation of probation. The court then reimposed appellant's suspended sentence and probation, beginning anew on November 22, 2010. Appellant noted this timely appeal on December 17, 2010.

## QUESTIONS PRESENTED

Appellant presents the following question, which we have edited for clarity:

Is a probation condition prohibiting direct contact between appellant and his wife, the domestic violence victim, an illegal sentence where the victim has expressed her desire to reconcile with appellant?

For the reasons that follow, we answer no and affirm appellant's sentence.

## FACTUAL AND PROCEDURAL HISTORY

On September 26, 2009, appellant and his wife, Mrs. Lambert had an argument over the contents of a lockbox. Appellant pushed Mrs. Lambert and she fell over a railing and down the stairs, injuring her head and abdomen. Accounts taken from Mrs. Lambert indicate that appellant pushed her down the stairs deliberately, while appellant maintains that he was

---

1. The State entered a *nolle prosequi* as to the charge of first-degree assault.

merely pushing her away from the lockbox and did not intend to cause her to fall down the stairs.

Appellant pleaded guilty to second degree assault on March 24, 2010, and he was sentenced on April 15, 2010. At sentencing, appellant admitted that he had assaulted Mrs. Lambert in the past.[2] Although Mrs. Lambert did not appear, in a letter to the court, she explained that she did not wish to be present if appellant were sent to jail. She informed the court that she could not remember the details of the September 26 assault, but she did not fear appellant and hoped to reconcile their marriage through counseling.

The court sentenced defendant to three years of confinement, all suspended, and placed him on three years of supervised probation. The trial court noted the ongoing pattern of assaultive behavior between appellant and Mrs. Lambert. The judge further explained that he had been involved, as an attorney, in a case of repeated domestic violence that resulted in the victim's death. Consequently, the judge imposed a special condition on appellant's probation that he "have no contact" with Mrs. Lambert during his probation period.

On August 10, 2010, the court denied appellant's motion for reconsideration of his sentence. At about that time, an anonymous tip led the State to discover that appellant and Mrs. Lambert had been communicating via telephone on a near-daily basis between May 17 and May 25, 2010. On September 8, 2010, appellant was charged with violating his probation.

On October 15, 2010, appellant moved under Rule 4–345 to correct his sentence as illegal. Appellant filed an affidavit from Mrs. Lambert in which she states that the no contact provision is against her wishes and "has grievously prejudiced and compromised" her marital relationship.

The court heard both the violation of probation and appellant's motion to correct his sentence on November 22, 2010. The court found appellant in violation of probation, denied his

---

2. While the defense and the State characterized this event differently, the Court was made aware of a disturbing pattern of abuse and threats directed to Mrs. Lambert, and of volatile behavior by both parties.

motion to correct the sentence, and reimposed his suspended sentence and probation, now set to end on November 22, 2013. Appellant noted this appeal on December 17, 2010, bringing the matter before us.

## DISCUSSION

 Appellant first argues that the no-contact provision of his sentence was grounded on improper considerations and violates the statutory authority to impose "probation on the conditions that the court considers proper" under Maryland Code (2001, 2008 Repl.Vol.), § 6-221(a) of the Criminal Procedure Article ("CP"). We begin our review with the standard summarized by Judge Chasanow in *Poe v. State*, 341 Md. 523, 531-32, 671 A.2d 501 (1996):

> A judge is vested with very broad discretion in sentencing criminal defendants, and is accorded this broad latitude to best accomplish the objectives of sentencing—punishment, deterrence, and rehabilitation. A judge should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background. [A] trial judge may base the sentence on perceptions derived from the evidence presented at the trial, the demeanor and veracity of the defendant gleaned from his various court appearances, as well as the data acquired from such other sources as the presentence investigation or any personal knowledge the judge may have gained from living in the same community as the offender. A trial judge's discretion is limited only by constitutional standards and statutory limits. The ultimate determination must not be motivated by ill-will, prejudice, or other impermissible considerations.

(Citations and quotation marks omitted.)

 We held in *Watson v. State*, 17 Md.App. 263, 274, 301 A.2d 26 (1973), that "[w]hatever latitude the statutes repose in the trial judge, it remains, of course, fundamental that conditions of probation must be reasonable and have a rational basis." Appellant contends that the court's "no contact" provision has no rational basis in fact because the court did not

consider "the absence of fear of bodily harm on the part of the defendant's spouse" and because the court based its decision "on a hypothetical 'cycle of violence.'" But Mrs. Lambert's professed lack of *subjective fear* did not compel the court to conclude that she was not, *in fact*, at risk of further violence if appellant remained in contact with her. Appellant has likewise failed to present any evidence indicating that further violence would not occur if the channels of communication were opened between Mrs. Lambert and him. Given appellant's previous incident of domestic violence against Mrs. Lambert, the burden lay upon him to convince the trial court—and this one—that the "no contact" provision will *not* advance the State's interest in protecting her. *See State v. Conkle*, 129 Ohio App.3d 177, 179, 717 N.E.2d 411 (1998) (probation prohibiting contact with wife for three years upheld because it is reasonably related to the goal of rehabilitating the defendant, bears a relationship to the crime of domestic violence, and is reasonably related to preventing future instances of domestic violence against the victim).

■ Appellant next argues that the sentence unconstitutionally impinges his rights to marriage, and that his "fundamental right to marriage would be hollow unless it included the ability to enjoy the marital relationship." [3] However, appellant presents no direct authority holding that a three-year ban on spousal contact is unconstitutional, nor has he persuaded us that his sentence is unconstitutional.[4] By perpe-

---

**3.** We note that, as an alternative to continuing on probation with the special "no contact" provision, appellant was offered the opportunity to serve his prison term, with whatever marital visitation privileges are available while in the custody of the State. This punishment for a violation of probation is certainly within the court's constitutional authority. Appellant, however, declined the offer, indicating that the present sentence was preferable to him. Nevertheless, a motion to correct an illegal sentence is not waived by the defendant's acquiescence at trial or sentencing, and it may be raised at any time. *Johnson v. State*, 427 Md. 356, 362, 47 A.3d 1002 (2012); Rule 4–345(a).

**4.** We note that there does not appear to be any Maryland case dealing with the constitutionality of a no contact provision between a husband and wife.

trating an act of domestic violence against his wife, appellant subordinated *his* rights to the *State's* interests in punishment, deterrence, and rehabilitation. *See Jennings v. State,* 339 Md. 675, 682, 664 A.2d 903 (1995). Even under the strict scrutiny test, we cannot say that the court's three-year prohibition on contact was excessive, given the necessity to advance the State's compelling interest in securing Mrs. Lambert's safety from yet another incident of domestic violence at the hands of appellant. *See State v. Guill,* 359 Mont. 225, 247, 248 P.3d 826, 840 (Mont.2011) (a fifteen year no contact provision burdened the defendant's right of marital privacy and association but was constitutional in light of the danger to the victim and society, and the need for defendant's rehabilitation). When appellant's probationary period expires—in a matter of months—he may initiate contact with Mrs. Lambert and attempt to reconcile their marriage, if that remains their wish.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**