*Troy Robert Allen v. State of Maryland*, No. 92, September Term, 2015.  Opinion by Hotten, J.

**CRIMINAL LAW – CONDTIONS OF PROBATION – REASONABLENESS –** The sentencing court did not abuse its discretion by prohibiting Petitioner from having unsupervised contact with minors, including the Petitioner's son, as a condition of Petitioner's supervised probation.  The no-unsupervised-contact condition was reasonably related to Petitioner's sexual abuse of his son's half-sister, who was a member of petitioner's household at the time of the abuse.

Circuit Court of Wicomico County, Maryland
Criminal Case No. 22-K-13-000586
Argued: 5.4.16

IN THE COURT OF APPEALS
OF MARYLAND

No. 92

September Term, 2015

_____

TROY ROBERT ALLEN

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Battaglia, Lynne A.
        (Retired, Specially Assigned),

JJ.

_____

Opinion by Hotten, J.

_____

Filed: July 12, 2016

This case concerns a condition of probation that impinges upon a defendant's fundamental due process right to parent his child. Troy Robert Allen ("Petitioner") was convicted after a jury trial in the Circuit Court for Wicomico County ("circuit court") of sexual abuse of a minor household member, § 3-602(b)(2) of the Md. Code (2002, Repl. Vol. 2012), Criminal Law Article ("Crim. Law"), two counts of third degree sex offense, Crim. Law § 3-307, three counts of second degree assault, Crim. Law § 3-203, and one count of fourth degree sex offense, Crim. Law § 3-308(b)(1). Pursuant to Petitioner's Motion for a New Trial, one of the convictions for third degree sex offense was stricken in favor of a finding of not guilty.

Petitioner was sentenced to twenty-five years' imprisonment (all but five years suspended) for sexual abuse of a minor, and twenty-one years' imprisonment (all suspended) for the remaining offenses, to run consecutively. Petitioner was also required to serve five years of supervised probation upon his release, with the condition that he have no unsupervised contact with minors. Petitioner appealed to the Court of Special Appeals, arguing, *inter alia*, that the circuit court erroneously prohibited unsupervised contact with his minor son during the probationary period. The Court of Special Appeals, in an unreported opinion, *Troy Robert Allen v. State of Maryland*, No. 0617, September Term, 2014, (October 7, 2015), held that the condition of probation was "sufficiently related" to the "sexual assault of a child residing in [Petitioner's] household[,]" and affirmed the judgments of the circuit court. This Court granted a Writ of Certiorari to determine whether the circuit court erred by imposing the no-unsupervised-contact with minors condition. For the reasons that follow, we shall affirm the judgments of the Court of Special Appeals.

**FACTUAL AND PROCEDURAL BACKGROUND**

After dating for several months in 2012, Petitioner and his then-girlfriend ("Marisa") began sharing a home in Salisbury, Maryland. At the time Petitioner and Marisa moved in together, Marisa had shared custody of her ten-year-old daughter from a prior relationship ("B.").[1] In March 2013, Petitioner and Marisa had a son ("F."), who resided in the home along with B.

The evidence at trial revealed several instances of B.'s sexual abuse at the hands of Petitioner while B. was a member of his household during 2012-2013:

On one such occasion, B. and Petitioner were sitting on the couches in the living room of their home when B. noticed that Petitioner's penis was protruding from the waistband of his shorts.[2] After Petitioner noticed that B. had seen his penis, Petitioner wrote "[d]id you see it?" on a piece of paper, which he later crumpled up. On a later occasion, B. was again sitting on a couch in the living room with Petitioner seated next to her, when Petitioner exposed his penis and asked her "to touch it[.]" When. B. refused, Petitioner placed the tip of his penis on her left forearm. During both of these incidents, Marisa was not present in the living room, but was elsewhere in the home. B. did not inform Marisa at the time, because she was fearful that Petitioner would become angry.

The evidence at trial also revealed that, on two occasions, Petitioner squeezed the nipple area of B.'s chest. During the first incident, Marisa, Petitioner and B. were grocery

---

[1] We mention the victim and her brother by their first initial only.

[2] B. testified that Petitioner showed her his penis on "[m]aybe more than two or three[]" occasions.

shopping, and Petitioner and B. were "horse playing[]" when Petitioner twisted B.'s nipple. B. informed Marisa that "[Petitioner] just pinched my boob[,]"[3] and Marisa confronted Petitioner by telling him: "don't ever touch her there again." Petitioner responded that he was sorry, but shortly thereafter told B. that "he was going to put his thing in [her] thing." On the second occasion, B. and Petitioner were alone in the kitchen of the residence and Petitioner "turned [B.] and then twisted [her] boob." Marisa was located elsewhere in the home during this later incident, and B. did not inform her of the abuse at the time.

On August 1, 2013, Marisa asked Petitioner to leave their shared home in Salisbury, and on August 4, 2013, B. spoke with police regarding the aforementioned abuse. On that same date, Marisa text messaged Petitioner concerning B.'s allegations, and Petitioner responded that "I will not go down like this, I won't have that label on me when I know it will go away." Petitioner further stated that "he would take his life and that he was leaving town and going to get a bus ticket."

## I.  Sentencing

In preparation for Petitioner's sentencing hearing, a psychologist employed with the Department of Health and Mental Hygiene ("DHMH") prepared a mental health assessment, and the Department of Parole and Probation prepared a pre-sentence investigation.[4]

---

[3] At trial, B. referred to her chest as her boob.

[4] Because Petitioner was convicted of an offense enumerated in Crim. Law § 3-602, he was required to submit to both the mental health assessment and pre-sentence investigation. Md. Code (2001, Repl. Vol. 2008), § 11-727 of the Criminal Procedure Article.

### a. The mental health assessment

Based on a two-and-a-half hour interview with Petitioner, along with the consideration of several documents, a licensed psychologist working with DHMH made several findings regarding Petitioner's account of the instant offense, Petitioner's background, and Petitioner's mental status. The psychologist also performed a structured risk assessment, and rendered conclusions and recommendations.

Concerning Petitioner's account of the instant offense, the psychologist noted that Petitioner "was very guarded and superficial in his discussion and had to be redirected to describe the events." According to the assessment, Petitioner stated that the occasions B. had seen his penis were "inadvertent" and "not purposeful." Petitioner remarked that "when he sat on the couch he slouched so that his shorts or pants went low on his hips and that he put his hands in the waistband of his pants." Petitioner stated his belief that "everyone sits like that[,]" and as a result, B. was able to view the tip of his penis. Petitioner reported that the incident at the grocery store was simply horseplay where he "was pinching" and "accidently got her chest." Petitioner reported that he was upset about the charges against him, and opined that "he does not believe that his crime is a sex offense."

Regarding Petitioner's background, he reported to the psychologist that "his sexual fantasies and behavior have always been heterosexual[]" and "[h]e denied any sexual behavior or fantasies involving men." Petitioner reported that, after he graduated high school and moved to North Carolina, he began "'talking with girls' via text over the phone." According to Petitioner, these girls would send him pictures and he "got into a porn addiction[,]" where he would use online dating sites to trade sexually explicit photos

with "freakier girls." Petitioner informed the psychologist that he moved to Maryland in an attempt to stop this behavior, but began "engaging in the … phone exchanges[]" when "his relationship with his girlfriend [(Marisa)] worsened." The psychologist noted that, in an interview with police, Petitioner acknowledged using an internet chat room to exchange pictures with girls who were 15 and 16 years old. Petitioner stated "that his exhibitionist behavior and fantasies all involved texts and phone messages, and denied exhibitionism in person." According to the psychologist, Petitioner "normalized his behavior" and his "level of insight was poor."

Concerning Petitioner's mental status, Petitioner was diagnosed with "[e]xhibitionist [d]isorder – pre-pubertal child victim" and "sexual abuse of a child – perpetrator":

> Exhibitionist disorder is diagnosed when an individual obtains recurrent and intense sexual arousal from the exposure of genitals to an unsuspecting person and has acted on these urges with a non-consenting person. Through his behavior on the internet and by texting, [Petitioner] gained arousal and sexual satisfaction including ejaculation through sending pictures of himself to others. In the instant case he furthered this behavior by exposing himself to an unsuspecting and non-consenting person, the pre-pubertal victim.

The risk assessment revealed that Petitioner exhibited a moderate risk of engaging in further acts of sexual violence. Using an actuarial assessment tool for quantifying the risk of sexual violence, the psychologist concluded that Petitioner was in the 78th percentile among adult male sexual offenders, with the 100th percentile being the most likely to reoffend. As a result, Petitioner's "risk of sexual re-offending, relative to other sex offenders, [was] estimated at being almost twice that of other sex offenders." The assessment noted that "[r]isk factors for re-offending in [Petitioner's] case include his

- 5 -

young age, history of repetitive problematic sexual behavior, and his lack of awareness of the potential impact of his behavior on a very young victim." The assessment's conclusion remarked that "[Petitioner] has a history of engaging in sexual behavior with young adolescents[,]" and "his lack of caution and inhibition in engaging in sexualized behavior in front of girls under 18 is problematic."

### b. The pre-sentence investigation

The pre-sentence investigation revealed that, as of March 31, 2014, Petitioner also had pending charges in Worcester County, Maryland for sexual abuse of a minor household member, sexual abuse of minor, and two counts of indecent exposure. The Worcester County case involved B. and another ten-year-old female. The pre-sentence investigation recommended that Petitioner be sentenced according to the Maryland sentencing guidelines, and, *inter alia*, "have no contact with the victim or her family," and "have no unsupervised contact with minor females[.]"

### c. The sentencing hearing

At Petitioner's sentencing hearing, the State of Maryland ("State") sought twenty-five years' incarceration (all but eight suspended) for the sexual abuse of a minor, consecutive suspended sentences on all remaining counts, and five years of supervised probation upon Petitioner's release. Among the conditions of probation requested by the State was that Petitioner have no contact with B., and "[n]o unsupervised contact with minors." Petitioner's counsel objected to the no-unsupervised-contact condition:

> [PETITIONER'S COUNSEL]: … Now, one of the problems is the unsupervised contact with minors….

[H]e has his own son, [F.]  Obviously, he needs to see him, should have contact with his son.  And I think that the Court, any Court Order would need to be a little more fine line than just no contact with minors.

THE COURT: Well, I think it just has to be another adult there is what I'm reading that to mean.

[PETITIONER'S COUNSEL]:  Well, I understand that, but with regard to [F.], there shouldn't be another adult, if it's his son.

There's no reason for it.  There's no basis in the law to be around his own son.

THE COURT:  Well, except for that he has a conviction for child sex abuse.

[PETITIONER'S COUNSEL]:  I understand that, but –

THE COURT: And his son's a child.

[PETITIONER'S COUNSEL]: – a parent's right to be with their child is one of the preeminent rights in the law.

THE COURT: I agree with you, but it's not an absolute right, and where there has been a child – at this point, he is convicted.

[PETITIONER'S COUNSEL]: Correct.

THE COURT:  And he is convicted of sex abuse of a child.

So, I don't think the [c]ourt is precluded from imposing a no unsupervised contact with minor – with his own son.  I mean, I don't know of any law or constitutional provision that disallows it.  I grant you, it's a rarity that Courts shouldn't just go there without any basis.  I agree with that.

[PETITIONER'S COUNSEL]: I understand.

The court imposed a sentence of 25 years' incarceration (all but five suspended) for the charge of sexual abuse of a minor.  The court imposed five years of supervised probation upon release, with the condition that Petitioner have no unsupervised contact

- 7 -

with minors. The court also imposed consecutive suspended sentences of ten years' incarceration for third-degree sex offense, ten years' incarceration for second-degree assault, and one year of incarceration for fourth-degree sex offense. The remaining two convictions for second-degree assault merged for sentencing purposes with the third-degree sex offense, and fourth degree sex offense. Petitioner filed a timely notice of appeal.

## II. Proceedings in the Court of Special Appeals

On appeal, Petitioner argued that, "to the extent the no unsupervised contact condition relates to [his] interaction with his own infant son, the condition constitutes an illegal sentence that must be vacated."[5] According to Petitioner, "there was no evidence presented which would have indicated that [he] presented any danger to either his son or to other children related to him by blood." Thus, "there was no rational basis for the imposition of the no unsupervised contact condition, which… unreasonably infring[ed] on his fundamental [due process] right to parent his child."

The Court of Special Appeals disagreed, and observed that trial courts have broad discretion in imposing a sentence. (quoting Md. Code (2001, Repl. Vol. 2008), § 6-221 of the Criminal Procedure Article ("Crim. Proc.")). According to the Court of Special Appeals, this discretion is limited by the requirement that:

> conditions of probation must be reasonable and have a rational basis. They must not be the product of arbitrariness or capriciousness. Moreover, the conditions imposed must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement.

---

[5] In his appeal to the Court of Special Appeals, Petitioner raised two other issues which are not relevant to the parties' arguments before this Court.

(quoting *Watson v. State*, 17 Md. App. 263, 274, 301 A.2d 26, 31-32 (1973)).

The Court of Special Appeals acknowledged that several federal cases cited by Petitioner indicated that a sentencing court must find evidence which unambiguously shows that the defendant is a danger to his own children before restricting access to them, (citing *United States v. Lonjose*, 663 F.3d 1292, 1303 (10th Cir. 2011), and further discussing *United States v. Bear*, 769 F.3d 1221, 1229 (10th Cir. 2014), and *United States v. Wolf Child*, 699 F.3d 1082, 1093 (9th Cir. 2012)). However, the Court remarked that that those cases are not binding in Maryland, and those cases "are directly at odds with Maryland's approach to limiting the custody and visitation rights of individuals who have previously abused or neglected a child."

Regarding Maryland's approach, the Court observed that, under Md. Code (1984, Repl. Vol. 2012), § 9-101 of the Family Law Article ("Fam. Law"), "an individual who has abused or neglected any child has no right to any unsupervised visitation unless he or she is able to persuade the court that there is no likelihood of further abuse of neglect." (emphasis omitted) (footnote omitted). The Court pointed out that § 9-101 "applies regardless of whether the child abused or neglected was the child whose custody or visitation is currently in issue." (citing *In re Adoption No. 12612*, 353 Md. 209, 234, 725 A.2d 1037, 1049-50 (1999)). Thus, according to the Court of Special Appeals, Maryland courts take a default position that a parent who has abused or neglected a child will be denied unsupervised contact with his or her own child.

Turning to the no-unsupervised-contact condition, the Court of Special Appeals observed that the condition did not impose an outright ban on contact, just unsupervised

- 9 -

contact, and was limited to the five year period of active probation. The Court of Special Appeals also noted that:

> [A] condition to the granting of probation which compels a defendant to give up a fundamental or constitutional right is not in and of itself unconstitutional or invalid. [A] court will not strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism. Such a condition cannot stand [only] if it is not related to the crime of which defendant has been convicted and if it has no reasonable relation to future criminality.

(quoting *Henson v. State*, 212 Md. App. 314, 327-28, 69 A.3d 26, 34, *cert. denied*, 434 Md. 314, 75 A.3d 319 (2013) (internal citations and quotations omitted)). The Court concluded that the condition of probation imposed "was sufficiently related to the crime for which [Petitioner] was convicted, *i.e.*, sexual assault of a child residing in his household."

## ANALYSIS

The case at bar presents a dispute over the requirement that conditions of probation "must be reasonable and have a rational connection to the offense." *Meyer v. State*, 445 Md. 648, 680, 128 A.3d 147, 166 (2015) (citation omitted). Petitioner contends that the no-unsupervised-contact condition was unreasonable and lacked a rational basis "[b]ecause there was no evidence produced at trial or sentencing that [Petitioner] was a threat to his biological son and because the challenged condition unduly infringed on [his] fundamental right to parent his child[.]" Petitioner cites to the decisions of several Federal Circuit Courts of Appeal and out-of-state jurisdictions for the proposition that conditions of probation infringing upon the right to parent should be viewed with "heightened

- 10 -

scrutiny[.]" In the case at bar, Petitioner contends that "heightened scrutiny" could only be satisfied where the record established that he posed a threat to "*his* child[.]" (emphasis added).

The State responds that a sentencing judge's broad discretion to impose conditions of probation—notwithstanding the fundamental constitutional implications of such conditions—is only limited by the requirement that conditions must be "reasonably related to … protecting the public and rehabilitating the defendant[.]" The State contends that the no-unsupervised-contact condition was reasonably related to Petitioner's "potential future criminality[]" where: 1) Petitioner failed to recognize the inappropriate nature of his behavior; 2) studies have documented the phenomenon of "crossover" – *i.e.*, where sex offenders abuse children of both genders, and also abuse relatives and non-relatives;[6] and 3) the challenged condition was narrowly tailored to prohibit only *unsupervised* contact for a five year period.

For the reasons expressed below, we decline Petitioner's request to strike the no-unsupervised-contact condition.[7] We hold that Maryland courts are not required to apply a "heightened" level of scrutiny to conditions of probation impinging upon the fundamental

[6] Jill S. Levenson et al. Jennifer Becker & John W. Morin, *The Relationship Between Victim Age and Gender Crossover Among Sex Offenders*, 20 Sexual Abuse: A Journal of Research and Treatment (March 2008); Dominique A. Simons, *Sex Offender Typologies* (2015).

[7] Petitioner requests that this Court "strike [the condition] to the extent it requires [his] contact with his son to be supervised[,]" but also alleges that "the challenged [condition] was not reasonable and lacked a rational basis and should be struck by this Court."

right to parent. Instead, we take the position that the challenged condition was only required to be reasonable and rationally connected to the offense of conviction, and the aforementioned condition satisfied this standard where Petitioner had been convicted of sexually abusing a minor child in his household.

## I. Conditions of Probation must be Reasonable and Have a Rational Connection to the Offense.

Upon a finding of guilt, the court may "suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper." Crim Proc. § 6-221; *Meyer*, 445 Md. at 679, 128 A.3d at 166 (citing *DeLeon v. State*, 102 Md. App. 58, 74, 648 A.2d 1053, 1060–61 (1994)). By exercising the authority to place a defendant on probation, the court engages in an act of clemency or leniency, whereby the defendant maintains his or her freedom. *Meyer*, 445 Md. at 679, 128 A.3d at 166 (citing *Harrison-Solomon v. State*, 442 Md. 254, 286, 112 A.3d 408, 428 (2015)); *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575, 580 (1965) ("Probation is a matter of grace, which aside from being an act of clemency extended to one who has committed a crime, is in substance and effect a bargain made by the people, through legislation and the courts, with the malefactor that he may be free as long as he conducts himself in a manner consonant with established communal standards and the safety of society.").

To further the goals of sentencing – "punishment, deterrence, and rehabilitation" – the court has broad discretion to impose conditions that curtail the defendant's liberty while on probation. *Meyer*, 445 Md. at 670, 128 A.3d at 160 (citation omitted); *Bailey v. State*, 355 Md. 287, 294, 734 A.2d 684, 687 (1999). This discretion, although broad, is limited

in several important respects: "a condition of probation must not be vague, indefinite or uncertain[,]" *Smith v. State*, 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986); conditions of probation must "not be arbitrary or capricious[,]" *Smith v. State*, 80 Md. App. 371, 375, 563 A.2d 1129, 1131 (1989) (citing *Watson v. State*, 17 Md. App. 263, 274, 301 A.2d 26 (1973)); "condition[s] of probation must … be constitutional[,]" *Kaylor v. State*, 285 Md. 66, 70, 400 A.2d 419, 422 (1979); conditions of probation must not exceed "statutory limits[,]" *Meyer*, 445 Md. at 670, 128 A.3d at 160 (citation omitted); and "conditions of probation must be reasonable and have a rational connection to the offense[,]" *id.* at 680, 128 A.3d at 166 (citation omitted). Regarding the latter requirement, neither this Court nor the Court of Special Appeals has issued a reported opinion considering the reasonableness of a condition of probation that limits this fundamental right.[8]

---

[8] This Court has firmly recognized the fundamental due process right of a parent to raise his or her child. *See, e.g., In re Mark M.*, 365 Md. 687, 705, 782 A.2d 332, 342 (2001). The Court of Special Appeals has further considered the reasonableness of a condition of probation that infringed upon the right to marry. *See Lambert v. State*, 209 Md. App. 600, 606-07, 61 A.3d 87, 90 (2013) (upholding a condition of probation that prohibited the defendant from having contact with his wife, reasoning that "[b]y perpetrating an act of domestic violence against his wife, appellant subordinated his rights to the State's interest in punishment, deterrence, and rehabilitation.") (citation omitted) (emphasis omitted). The Court of Special Appeals has also considered the propriety of a condition of probation that limited the defendant's contact with his son, by prohibiting contact with the defendant's girlfriend/victim. *See Douglas v. State*, 130 Md. App. 666, 675-76, 747 A.2d 752, 757(2000) (upholding the condition without discussion of fundamental parental rights).

This Court has also commented that a condition of probation prohibiting the defendant from having unsupervised contact with minors was legal where the defendant had been convicted of sexually abusing his niece and another child. *State v. Griswold*, 374 Md. 184, 188, 821 A.2d 430, 433 (2003).

The best guidance on this subject in Maryland jurisprudence is the Court of Special Appeals decision in *Henson*, 212 Md. App. 314, 69 A.3d 26, *cert. denied*, 434 Md. 314, 75 A.3d 319 (2013), where the Court considered the interplay between the reasonableness requirement and fundamental constitutional rights in general. In that case, Mr. Henson was found guilty "of conspiracy to violate Md. Code (2003, 2010 Repl. Vol.), §§ 13–401 and 13–602(a)(9) of the Election Law Article (["Elec. Law"]), by distributing campaign material without an 'authority line' disclosing the name of the responsible campaign finance entity and treasurer." *Id.* at 317-18; 69 A.3d at 28. Mr. Henson was sentenced to one year incarceration (two months suspended), and three years of probation with the condition that he not work or volunteer "in any capacity in election campaigns[.]" *Id.* at 320, 69 A.3d at 30.

On appeal, Mr. Henson challenged the aforementioned condition of probation on the grounds that it violated his "[c]onstitutional right to free association[,] to contracts[,] and access to political speech." *Id.* at 327, 69 A.3d at 34. In denying this argument, the Court of Special Appeals observed that trial judges are vested with "very broad discretion" when imposing conditions of probation, and "a condition to the granting of probation which compels a defendant to give up a fundamental or constitutional right is not in and of itself unconstitutional or invalid." *Id.* 327-28, 69 A.3d at 34 (quoting *People v. Lewis*, 77 Cal.App.3d 455, 463 (1978)). The Court adhered to the reasonableness standard, and noted that the condition "'cannot stand [only] if it is not related to the crime of which defendant has been convicted and if it has no reasonable relation to future criminality.'" *Id.* at 328, 69 A.3d at 34.

- 14 -

The Court observed that several out-of-state and federal jurisdictions have upheld prohibitions on employment and political speech/association as a condition of probation. *Id.* at 328-30, 69 A.3d at 34-36 (citing *People v. Caruso*, 174 Cal.App.2d 624, 647 (1959), *State v. Fox*, 22 Conn. App. 449, 457 (1990), *United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999), *Malone v. United States*, 502 F.2d 554, 556-57 (9th Cir. 1974)) (citations omitted)). The Court thereafter held that the condition of probation was rationally related to Mr. Henson's election law violations, and that the condition was narrowly tailored, as it imposed "no … legitimate control over [Mr. Henson's] political activities[,]" other than the work-related campaign restriction. *Id.* at 331;,69 A.3d at 36.

Consistent with *Henson*, Petitioner acknowledges that conditions of probation should be reviewed for reasonableness. However, Petitioner discusses several Federal Circuit Court of Appeals decisions that have applied a "heightened" level of scrutiny to conditions of supervised release that infringe upon the fundamental right to parent. *See United States v. Meyers*, 426 F.3d 117, 123-24 (2d Cir. 2005) (indicating that the challenged condition must 'involve[] no greater deprivation of liberty than is reasonably necessary' for the protection of children, or the furtherance of another sentencing aim); *United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th Cir. 2012) (noting that "the sentencing court, at the time it imposes the restrictive condition on the exercise of a particularly significant liberty interest, must itself point to the evidence in the record on which it relies and explain how on the basis of that evidence the particular restriction is justified."); *United States v. Bear*, 769 F.3d 1221 (10th Cir. 2014); *United States v. Lonjose*, 663 F.3d 1292, 1303 (10th Cir. 2011) (noting that a district court abuses its discretion

where it imposes a condition that infringes upon that right to parent "in the absence of a record that 'unambiguously support[s] a finding' that the defendant is a danger to his own family members.") (citation omitted).

Petitioner also discusses two out-of-state decisions that applied a form of heightened scrutiny to conditions of probation that interfere with the defendant's familial relations. *State v. Letourneau,* 100 Wash. App. 424, 438 (2000) (remarking that "limitations on fundamental rights during community custody" must be "reasonably necessary to accomplish the essential needs of the [S]tate."); *Simants v. State,* 329 P.3d 1033, 1038-39 (Alaska Ct. App. 2014) (noting that conditions of probation which infringe upon the defendant's "familial associations" are reviewed with "special scrutiny" – requiring that the condition be "reasonably related to the rehabilitation of the offender and protection of the public" and "narrowly tailored to avoid unnecessary interference with the [the defendant's] family relationships.") (footnote omitted).

According to Petitioner, the aforementioned cases establish that "a sentencing court may not impose a condition that impinges upon a defendant's right to parent unless there is evidence in the record that demonstrates the defendant is in fact a danger to his children." Applying this standard, Petitioner contends that the no-unsupervised-contact condition must be stricken because none of the testimony detailed incidents involving F. or other children related to Petitioner by blood. Petitioner proffers that none of the activities detailed in the mental health assessment – *i.e.,* addiction to pornography and sending explicit photos via the internet/text message – involved boys of any age, and notes that he only reported sexual fantasies of a heterosexual nature. Petitioner contends that the DHMH

- 16 -

psychologist "was not concerned with his sexualized behavior generally but that she was instead concerned about that behavior in front of girls under the age of eighteen." Petitioner similarly highlights that the pre-sentence investigation only recommended that he not have unsupervised contact with minor females, but was silent about contact with his minor son. Accordingly, Petitioner contends that the no-unsupervised-contact condition was not reasonably related to the protection of minors, including F.

We disagree. While the reasonableness standard required that the record justify the no-unsupervised-contact condition, Petitioner erroneously contends that the condition could not include his own child, unless the victim of the defendant's abuse was the same gender as his child, and/or was a blood relative of Petitioner. Although some of the cases discussed by Petitioner seem to impose such a requirement, we decline to read such a requirement into Maryland's reasonableness standard. Furthermore, notwithstanding the disparities in gender and blood relation between B. and F., the no-unsupervised-contact condition was reasonably related to the protection of minors, including F.

### a. The reasonableness standard did not require the sentencing court to tailor the no-unsupervised-contact condition to the specific attributes of Petitioner's victim.

Several jurisdictions adhere to a reasonableness standard where a condition of probation infringes upon a defendant's constitutional right to parent. *See State v. Jones*, 49 Ohio St. 3d 51, 53 (1990); *State v. Strickland*, 169 N.C.App. 193 (2005); *Perkins v. State*, 317 P.3d 584, 588 (Wyo. 2014); *Com. v. Dewey*, 57 A.3d 1267, 1270 (Pa Super. 2012). However, the reasoning of the Court of Appeals of North Carolina—in declining

- 17 -

to require that conditions of probation be narrowly tailored to protection of the type of victim abused—is particularly persuasive. *State v. Strickland*, 169 N.C.App. 193 (2005).

In *Strickland*, the defendant was convicted of several counts of taking indecent liberties with a child after he had sexual intercourse with the minor sister of his wife, who was residing in his home at the time. *Id.* at 194. The defendant was given a suspended sentence and placed on 36 months of supervised probation, with the condition that he not reside in a household with a minor. *Id.* at 195. In light of the defendant's convictions, that condition was required by N.C. Gen. Stat. § 15-1343(b2)(4), providing that a defendant may "not reside in a household with a minor child if the offense is one in which there is evidence of sexual abuse of a minor." *Id.* The defendant's probation was subsequently revoked and his sentences were activated, after he was found to be residing with his minor son, who was conceived as a result of the defendant's criminal conduct. *Id.* The defendant appealed the revocation of his probation, contending that the aforementioned condition "deprived [him] of his constitutional rights to parent and care for his minor child without any showing that [he] was unfit or that the child was endangered." *Id.*

The Court of Appeals of North Carolina noted that "[t]he restriction on [defendant's] association rights is valid if (1) primarily designed to meet ends of rehabilitation and protection of the public, and (2) reasonably related to such ends." *Id.* at 196 (citation omitted). The Court thereafter rejected the defendant's argument that N.C. Gen. Stat. § 15-1343(b2)(4) was unconstitutional as applied to him because he posed no threat to his own child:

Defendant argues that his crime arose out of his sexual contact with his thirteen-year-old sister-in-law, who was not a blood relative, and that there was no evidence that he had ever abused his own children.

No court in our jurisdiction has directly addressed the constitutionality of a condition of probation preventing a defendant from residing with his own child on similar facts, so we look outside of North Carolina for guidance. In *Commonwealth v. LaPointe,* the Supreme Court of Massachusetts stated: "We reject the defendant's contention that the condition prohibiting him from residing with his son M.L. is invalid because the defendant 'has no history of any sexual relations with males (adults or children),'.... Irrespective of gender, as a minor, M.L. could be considered a potential target of the defendant. The judge acted reasonably in providing M.L. with some measure of protection." *Commonwealth v. LaPointe,* 435 Mass. 455, 759 N.E.2d 294, 299 (2001). We believe the same logic counsels caution in allowing defendant to reside with his own child when he has been convicted of taking indecent liberties with a minor not his child, particularly, as here, when defendant took advantage of the fact that he was residing with the minor victim to facilitate the abuse. *See State v. Ehli,* 681 N.W.2d 808 (N.D., 2004). Further, the victim in the instant case was related to defendant through marriage. To the extent that defendant might feel tempted to sexually abuse a minor child when it and defendant are residing under the same roof, N.C. Gen.Stat. § 15A-1343(b2)(4) also serves the purposes of sentencing and probation of rehabilitation by removing defendant from the temptation to repeat his crimes. The limitations placed on defendant by N.C. Gen.Stat. § 15A-1343(b2)(4) further serve as a deterrent, as defendant will realize this is one consequence of his criminal acts.

Defendant would have the courts make a detailed investigation in each case to the peculiar sexual desires of a child sex offender. The trial court would then be required to tailor the conditions of a defendant's probation to his particular form of predatory behavior. We expressly reject such an approach. In light of the fact that defendant repeatedly molested a child while living in the same household as his wife and mother-in-law, we hold that a restriction prohibiting defendant from residing in a household with any child, regardless of the gender or relationship of defendant to the child, is not unreasonable, or violative of defendant's constitutional rights.

*Id.* at 197-98.

The reasonableness standard applied by the North Carolina Court of Appeals in *Strickland*—rejecting a standard where "[t]he trial court would … be required to tailor the conditions of a defendant's probation to his [or her] particular form of predatory behavior"—is most consistent with the nature of parental rights and probation in Maryland. There is further sound policy supporting an approach similar to that in *Strickland*.

We have recognized that the fundamental right to raise one's child is not absolute, and the right must frequently cede to the State's interest as *parens patriae* "in caring for those, such as minors, who cannot care for themselves." *In Re Mark M.*, 365 Md. at 705-06, 782 A.2d at 343 (citing *Boswell v. Boswell*, 352 Md. 204, 218, 721 A.2d 662, 669 (1998)). Fam. Law § 9-101 illustrates this principle by providing that a party to a child custody hearing that has previously abused a child shall be denied custody "[u]nless the court specifically finds that there is no likelihood of further child abuse or neglect by the party[.]" This Court has previously ruled that Fam. Law § 9-101 is not limited to scenarios where the child whose custody is in issue is also the child who has been abused. *In re Adoption No. 12612*, 353 Md. at 238-39, 725 A.2d at 1052. Thus, as aptly noted by the Court of Special Appeals, Fam. Law § 9-101 represents a default position that a parent who "has abused or neglected *a* child" shall be denied "unsupervised contact with *his or her own* child." (emphasis added).

Regarding the nature of probation, this Court has acknowledged that probationers do not enjoy the breadth of constitutional rights that are enjoyed by law abiding citizens. *See Corbin v. State*, 428 Md. 488, 504, 52 A.3d 946, 955 (2012) ("[P]robationers do not enjoy the same liberty rights as other citizens and have fewer legitimate expectations about

- 20 -

privacy than law-abiding citizens."); *see also United States v. Knight*, 534 U.S. 112, 119, 112 S.Ct. 587, 591 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'"). Rather, in exchange for an act of leniency by the court, the probationer voluntarily agrees to certain limitations on his or her rights, which the court is free to impose in its discretion. *See* Crim. Proc. § 6-221.

While Maryland courts are accorded wide latitude to impose conditions of probation under Crim. Proc. § 6-221, the decisions from the federal circuits applying heightened scrutiny were reviewing conditions of supervised release imposed under 18 U.S.C. § 3583(d)(2). This distinction is notable because, unlike conditions of probation under Crim. Proc. § 6-221, conditions of supervised release must "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C. §] 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d). The §3553 factors include the "deterrence [of] criminal conduct[,]" 18 U.S.C. § 3553(a)(2)(B), the protection of the public "from further crimes of the defendant[,]" 18 U.S.C. § 3553(a)(2)(C), and the provision of "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(D). Obviously, sentencing courts in Maryland need not comply with the "reasonably necessary" provisions of 18 U.S.C. § 3583(d), and as a result, the "heightened" scrutiny analysis of the cases applying that statute are of limited relevance. *See* Crim Proc. § 6-221.

In addition, the very nature of probation in Maryland, as opposed to supervised release under the federal sentencing system, requires that conditions under each of these

systems be treated differently. As noted above, "probation is considered to be a matter of grace and an act of clemency" which generally takes the place of a term of incarceration. *See Meyer*, 445 Md. at 679, 128 A.3d at 166 (citation omitted). To the contrary, supervised release is added to the court's sentence by being imposed "after imprisonment[.]" 18 U.S.C. § 3583(a). This distinction is important because a sentencing judge in Maryland, by imposing probation, is allowing the defendant substantially more liberties than he or she would otherwise enjoy while incarcerated; whereas a judge who imposes supervised release is imposing additional restrictions after incarceration. Accordingly, while heightened scrutiny may apply to a condition of supervised release that infringes upon the fundamental right to parent, there is little rationale for applying this heightened standard where a sentencing judge has allowed the defendant substantially more liberties by placing him or her on probation.

Lastly, as a matter of sound policy, conditions of probation should not be subjected to the "heightened" scrutiny called for by Petitioner – requiring a sentencing court to tailor conditions of probation "to the peculiar sexual desires of a child sex offender[.]" *Strickland*, *supra.* The studies discussed by the State illustrate that sex offenders do not necessarily limit their criminal behavior to one specific "type" of victim, and that offenders may abuse both relatives and non-relatives, and both males and females. *See* Levenson et al. and Simons, *supra.* While we do not opine on the frequency with which "crossover" occurs, our holding allows the sentencing court, when faced with the protection of minors at the expense of parental rights, to exercise its discretion in furtherance of the former.

Accordingly, we adhere to the requirement that "conditions of probation must be reasonable and have a rational connection to the offense[.]" *Meyer*, 445 Md. at 680, 128 A.3d at 166 (citation omitted). However, in doing so, we decline Petitioner's invitation to hold that this standard cannot be satisfied by a condition that restricts the defendant's contact with his children, unless the victim of the defendant's abuse is the same gender as the defendant's children, and/or is a blood relative of the defendant.

### b. The no-unsupervised-contact condition was reasonably related to the protection of children and Petitioner's future criminality.

In applying this standard, we believe that the no-unsupervised-contact condition was reasonably related to the protection of children, including F. Petitioner's focus on the gender of his victim overlooks the fact that B. was the half-sister of F., and that Petitioner took advantage of his living arrangement with B. to commit the sexual abuse for which he was convicted and sentenced. In light of the mental health assessment, which "gave [the sentencing court] a lot of concern[,]" there was a deterrent value in preventing the Petitioner from occupying such a position with respect to F. According to that assessment, Petitioner failed to recognize the inappropriate nature of his behavior, and repeatedly attempted to minimize his actions. Regarding the exposure of his penis, Petitioner reported that B. may have inadvertently seen the tip of his penis because he routinely sits on the couch with his hands down the front of his pants. Petitioner opined that "everyone sits like that." Regarding the incidents of grabbing B.'s chest, Petitioner attributed this to "horsing around." In general, Petitioner expressed that he was upset with the charges against him, and revealed that "he does not believe that his crime was a sex offense."

The aforementioned evidence indicates that the no-unsupervised-contact-condition was reasonably related to the protection of F. Contrary to Petitioner's arguments in this Court and the Court of Special Appeals, the sentencing court did not abuse its discretion by neglecting to tailor the condition to the specific attributes of Petitioner's victim, *i.e.*, by imposing a condition of no-unsupervised-contact with minor females, or all non-blood-related minors. As we noted above, such a requirement would place the sentencing court in the precarious position of trying to delineate "the peculiar sexual desires of a child sex offender" where those desires may change and evolve.

Lastly, assuming, *arguendo*, that we did apply a heightened scrutiny standard, the no-unsupervised-contact condition was narrowly tailored in the sense that it prevented only *unsupervised* contact with F., and only lasted during Petitioner's five year probationary term. These limiting characteristics distinguish the no-unsupervised-contact condition from those reflected in the cases discussed by Petitioner, *cf. Wolf Child*, 699 F.3d at 1089 (striking a condition of supervised release that prohibited the defendant from "resid[ing] in the home, residence, or be[ing] in the company of any child under the age of 18[]" "without the prior written approval of the United States Probation [Office]); *Lonjose*, 663 F.3d at 1303 (striking a condition of supervised release requiring prior written permission by the United States Probation Office before the defendant could have contact with his son), and make the present condition more similar to conditions which have been upheld by other jurisdictions. *See Strickland*, 169 N.C. App. at 196-97 (upholding a condition of probation preventing the defendant from residing with his son, where the condition was limited to a 36 month probationary period, and "did not prevent the defendant from visiting his

child[.]"); *State v. Coreau*, 651 A.2d 319, 321 (Me. 1994) (holding that a prohibition on all contact with a probationer's children was an abuse of discretion, but approving of a prohibition on unsupervised contact only). Accordingly, we hold that the sentencing court did not abuse its discretion in imposing a reasonable and narrowly-tailored condition of probation that prohibited unsupervised contact with minors, including Petitioner's son.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS ARE AFFIRMED. COSTS TO BE PAID BY PETITIONER.**