*In Re: S.F.*, No. 10, September Term, 2021.  Opinion by Hotten, J.

**CIVIL PROCEDURE – APPEALS – MOOTNESS**

A case is moot when "at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide.'"  *Bd. of Physician Quality Assurance v. Levitsky*, 353 Md. 188, 200, 725 A.2d 1027, 1033 (1999) (citations omitted).  This Court has discretion "to express [its] views on the merits of a moot case . . . in instances where[] the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest. . . ."  *J.L. Matthews, Inc. v. Maryland-National Capital Park and Planning Comm'n*, 368 Md. 71, 96, 792 A.2d 288, 302–03 (2002) (citations and quotation omitted).  In the case at bar, Petitioner, a juvenile at the time, was ordered as a condition of probation to attend school regularly without suspensions.  Petitioner appealed the "no-suspension" condition of probation as impermissibly vague.  Before the case reached this Court, the issue became moot because Petitioner completed probation.  This Court decided to address the merits of whether a "no-suspension" condition is impermissibly vague because the number of students on probation meant the issue would recur frequently, the limited duration of juvenile probation suggested the issue would continue to evade judicial review, and providing guidance to juvenile courts when ordering conditions of probation implicated a matter of important public concern.

**CRIMINAL LAW – SENTENCING – CONDITIONS OF PROBATION**

Juvenile courts have broad discretion when imposing conditions of probation, but a juvenile court abuses its discretion when a condition of probation is "vague, indefinite or uncertain[,] . . . arbitrary or capricious. . . ."  *Allen v. State*, 449 Md. 98, 111, 141 A.3d 194, 202 (2016) (citations and quotations omitted).  A condition of probation is not vague when it provides reasonable and specific guidance so that the probationer understands "what is required[.]"  *Meyer v. State*, 445 Md. 648, 680, 128 A.3d 147, 166 (2015).  In the case at bar, this Court found that the condition ordering Petitioner to attend school regularly without suspensions was not vague because it reasonably informed Petitioner to abide by school rules, pursuant to the student code of conduct, while on probation.  The determination by a third party, specifically a school administrator, of whether Petitioner violated a condition of probation did not render the condition of probation vague.  *See, e.g.*, *Hudgins v. State*, 292 Md. 342, 349, 438 A.2d 928, 931 (1982) (holding that a condition of probation was not made vague by permitting the Maryland State Police to determine whether defendant adequately cooperated as an informant).  This Court held that the juvenile court did not abuse its discretion in ordering Petitioner to attend school regularly without suspensions as a condition of probation.

IN THE COURT OF APPEALS

OF MARYLAND

No. 10

September Term, 2021

_____

IN RE: S.F.

_____

Getty, C.J.,
McDonald,
Watts,
Hotten,
Booth,
Biran,
Gould,

JJ.

_____

Opinion by Hotten, J.
Watts, J., dissents.

_____

Filed: February 3, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

S.F.[1] was charged with second-degree assault and misdemeanor theft in the Circuit Court for Frederick County, sitting as a juvenile court ("the juvenile court"). S.F. was twelve years old at the time. Each charge was alleged in a separate Delinquency Petition,[2] filed approximately five months apart, and the cases proceeded separately. S.F. entered an *Alford* plea[3] for each charge. The juvenile magistrate in each case recommended probation. An identical condition of probation for each case was for S.F. to attend school regularly without suspensions.

Counsel for S.F. excepted to the no-suspension condition of probation as impermissibly vague in both cases. A hearing for both exceptions occurred on June 5, 2019. The juvenile court denied the exceptions and ordered S.F. to "[a]ttend school regularly without any . . . suspensions. . . ." S.F. noted a timely appeal to the Court of Special Appeals, which affirmed.

---

[1] "Out of respect for the privacy interests of the parties, we shall refer to them by their initials throughout this opinion." *In re: R.S.*, 470 Md. 380, 386 n.1, 235 A.3d 914, 918 n.1 (2020).

[2] Delinquency proceedings are initiated when someone under the age of 18 commits an act that would be a crime if the person were an adult. Md. Code Ann., Courts and Judicial Proceedings ("Cts. & Jud. Proc.") § 3-8A-01. The State's Attorney files a Delinquency Petition with the juvenile court alleging the child is delinquent. Md. Rule 11-103.

[3] "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he [or she] is unwilling or unable to admit his [or her] participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970). "Maryland permits acceptance of an [*Alford*] plea." *Banegura v. Taylor*, 312 Md. 609, 613 n.1, 541 A.2d 969, 971 n.1 (1988) (citations omitted).

S.F. filed a petition for writ of *certiorari* on March 17, 2021. By this point, S.F. had successfully completed probation and the juvenile court closed the cases. S.F. acknowledged that the appeal was "moot as to him[, b]ut the issue [was] not moot to the many children who may be subject to no-suspension conditions of probation as a result of the Court of Special Appeals' reported opinion."

We granted *certiorari* on May 11, 2021 to address the following question: "Is it improper for a juvenile court to make a school's discretionary decision to suspend a child a violation of the child's probation?"

We answer the question in the negative and shall affirm the judgment of the Court of Special Appeals.

## FACTS AND PROCEDURAL BACKGROUND[4]

### *The Underlying Incidents*

On or about October 8, 2018 during regular school hours, S.F., followed by another student enrolled at Monocacy Middle School in Frederick, Maryland, ran into a classroom and began to punch another student, J.C., who fell into a metal desk, striking his head. S.F. claimed that he was retaliating for an earlier provocation from J.C. Thereafter, S.F. had to be pulled from J.C. during a second physical altercation that occurred in the hallway. On

---

[4] The facts underlying the appeal are derived from the State's recital of the proof that would have been presented at trial and other documents submitted during the juvenile court proceedings.

November 19, 2018, the State filed a Delinquency Petition charging S.F. with second-degree assault in violation of Md. Code Ann., Criminal Law ("Crim. Law") § 3-203.[5]

On December 9, 2018, Officer Steven Brown with the Frederick City Police Department responded to a burglary at 150 Stonegate Drive in Frederick City, Maryland. The sliding door of a home was found open and several items, including a pair of Nike Air Jordan's with blue soles and a red Tommy Hilfiger jacket with blue lining were missing. On January 8, 2019, Officer Brown returned to 150 Stonegate Drive, where the homeowner advised Officer Brown that S.F. was seen wearing a pair of Nike Air Jordan's with blue soles and a red Tommy Hilfiger jacket at a nearby McDonald's restaurant. These items belonged to the homeowner's son, who was "able to provide pictures from Snapchat showing [S.F.] was wearing the jacket." The State explained that "if called to testify, the witnesses would identify [S.F.] as the party responsible[]" for the theft of the personal property. On April 3, 2019, the State filed a Delinquency Petition that charged S.F. with theft of at least $100 but less than $1,500 pursuant to Crim. Law § 7-104.[6]

---

[5] Crim. Law § 3-203 provides that a "person may not commit an assault[,]" which pursuant to Crim. Law § 3-201 includes the crime of battery. *See Elias v. State*, 339 Md. 169, 183, 661 A.2d 702, 709 (1995) ("In Maryland, battery is a common law misdemeanor which is generally defined as the 'unlawful application of force to the person of another.'") (citations omitted).

[6] Crim. Law § 7-104 provides in pertinent part:

(a) A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person:
(1) intends to deprive the owner of the property;
(2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property;

(continued . . .)

3

*Circuit Court Proceedings*

S.F. entered an *Alford* plea to the count of second-degree assault on February 12, 2019 before the juvenile court. The juvenile magistrate delayed the date of disposition so the Maryland Department of Juvenile Services ("DJS")[7] could complete a pre-disposition investigation. S.F. was also placed on pre-disposition supervision by DJS.

Amy S. Gass, the assigned Case Management Specialist for DJS, submitted a Social History Investigation & Recommendation to the juvenile court on March 29, 2019. The report documented S.F.'s medical health, behavioral history, school disciplinary record, and criminal offenses. Ms. Gass noted that S.F. "has a long history of behavioral incidents in school." While enrolled at Monocacy Middle School from September 2018 to November 2018, S.F. was cited for twenty-two distinct disciplinary infractions ranging from disruption and disrespect to fighting and assault, the latter of which resulted in a short-

---

(. . . continued)

> (3) or uses, conceals, or abandons the property knowing the use, concealment or abandonment probably will deprive the owner of the property.
> ***
> (g)(2) Except as provided in paragraph (3) of this subsection, a person convicted of theft of property or services with a value of at least $100 but less than $1,500, is guilty of a misdemeanor. . . .

[7] DJS "is an executive agency whose primary task is to appropriately manage, supervise and treat youth who are involved in the juvenile justice system in Maryland. [DJS] is involved in nearly every stage of the juvenile justice process from the moment a youth is brought into a juvenile intake center . . . to the time when a youth returns to the community after completing treatment." *About Us*, Maryland Department of Juvenile Services, https://djs.maryland.gov/Pages/about-us/About.aspx (last visited Nov. 29, 2021), archived at https://perma.cc/E9JN-E776.

term suspension. S.F. transferred to Heather Ridge Middle School in Frederick for the Spring 2019 semester and was cited for sixteen distinct disciplinary infractions between January and February 2019. In the summary and recommendations section of the report, Ms. Gass concluded that S.F. "has a history of problematic behavior in school and in the home. . . . Given the rapid accumulation of charges, [DJS] does recommend a period of supervised probation[.] . . ." (Emphasis removed).

On April 2, 2019, during the disposition hearing, a juvenile magistrate recommended that S.F. be placed on probation subject to several conditions. In addition to the standard conditions of supervision, S.F. was required to "report to [his] probation officer as directed, appear in court when notified, permit [his] probation officer to come to [his] home, or if [he was] arrested, *attend school regularly without any* unexcused absences, *suspensions* or tardies . . . remain drug and alcohol free . . . and [s]ubmit to a drug and alcohol assessment. . . ." (Emphasis added). During the hearing, counsel for S.F. objected to the inclusion of the no-suspension condition of probation. The juvenile magistrate rejected the argument that the condition was vague:

> [*S*]*uspensions go to behavior related issues like not fighting in school, not showing up high at school. And these are all affirmative*[] *behaviors on the part of the respondent.* And if the respondent violates his probation as a result of a suspension, [] it [would] be at the time of the [violation of probation] hearing that [the suspension] is litigated[.] . . .

(Emphasis added).

5

Following the hearing, counsel for S.F. filed an exception, pursuant to Maryland Rule 11-111(c) (2021),[8] to the condition of "'[a]ttend school regularly without any unexcused absences, suspensions or tardiness', specifically the part regarding suspensions." (Emphasis omitted). Counsel for S.F. excepted to the condition because it could be violated without any willful behavior by S.F. According to counsel, "[S.F.] seeks to remove only the possibility of being found in violation in a way in which he has no control, [*i.e.*], being suspended from school." The State filed a response requesting the juvenile court to deny the exception because "whether or not a suspension was due to the Respondent's willful behavior is a factual determination to be made by the trial court[, and] it is not cause to strike a valid probation condition."

In a separate proceeding, on May 16, 2019, S.F. entered an *Alford* plea to the charge of theft in violation of Crim. Law § 7-104. S.F. agreed to waive the five-day waiting period before disposition, and the juvenile magistrate recommended S.F. be placed on concurrent probation for the counts of assault and theft, supervised by DJS. Over objection from counsel for S.F., one of the conditions for probation again required that S.F. attend school regularly without suspensions. S.F. filed another exception to the no-suspension condition

_____

[8] Maryland Rule 11-111(c), as codified at the time, provided in pertinent part:

**Review by Court if Exceptions Filed.** Any party may file exceptions to the magistrate's proposed findings, conclusions, recommendations or proposed orders. Exceptions shall be in writing, filed with the clerk within five days after the magistrate's report is served upon the party, and shall specify those items to which the party excepts, and whether the hearing is to be de novo or on the record.

The relevant rule is now codified at Md. Rule 11-103(e) and took effect on January 1, 2022.

of probation pursuant to Md. Rule 11-111(c). S.F. requested "in the interest[] of judicial economy[]" that the exceptions hearing concurrently address the identical no-suspension condition of probation for both cases.

On June 5, 2019, the juvenile court considered argument on the exception to the condition of probation for both cases. The juvenile court denied the exception, explaining that:

> [H]onestly, I don't think that saying no suspensions -- I just can't go along with the argument that it's vague or indefinite or uncertain. I do think that -- I can see your argument by saying ["]live a correct life,["] what does that mean? I mean, that's vague. But I don't think that this term of probation or condition of probation is vague in any way. So I'm going to deny the exceptions and affirm the Magistrate's decision in putting that in there.

The juvenile court disagreed with the argument that the no-suspension condition of probation would subject S.F. to arbitrary punishment:

> I would hope that most schools, if not all schools would actually give an explanation as to the suspension and give the child an opportunity to contest the suspension. But even assuming that . . . there's no explanation, if a child comes before me for a violation of probation hearing, I would want to know the basis for the suspension. So I don't think that you'd have to fear that.

Prior to the June 5, 2019 hearing, S.F. and his mother moved to Dauphin County, Pennsylvania. The relocation to another jurisdiction did not affect the disposition of the juvenile court, and courtesy supervision was provided by Pennsylvania juvenile authorities through interstate compact.[9] On October 17, 2019, S.F.'s mother requested closure of his

---

[9] "The Interstate Compact on Juveniles (ICJ) is a multi-state agreement that provides the procedural means to regulate the movement across State lines of juveniles who are under court supervision." Christopher Holloway, *Interstate Compact on Juveniles*, United States Department of Justice, Office of Justice Programs Fact Sheet (Sept. 2000),

(continued . . .)

7

cases. Pennsylvania juvenile authorities agreed and recommended discharge from supervision on April 9, 2020. Following several assessments, Ms. Gass filed a report requesting closure of S.F.'s cases on May 20, 2020. The juvenile court closed S.F.'s cases on May 22, 2020.

***Opinion of the Court of Special Appeals***

Before the closure of S.F.'s cases, S.F. timely noted an appeal to the Court of Special Appeals on June 7, 2019. The Court affirmed the juvenile court and held that the condition of probation was not unduly vague and did not lack procedural safeguards. *In re S.F.*, 249 Md. App. 50, 60, 61, 245 A.3d 30, 36, 37 (2021).

According to the Court, the condition of probation was "clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement." *Id.* at 55, 245 A.3d at 33 (quoting *Watson v. State*, 17 Md. App. 263, 274, 301 A.2d 26, 31–32 (1973)). The Court found "no confusion about what it means to be suspended from school. . . ." *Id.* at 57, 245 A.3d at 34. The code of student conduct informed S.F., like all students enrolled in Fredrick County Public Schools ("FCPS"), of behavior punishable by suspension. *Id.*, 245 A.3d at 34. FCPS posted the student code of conduct online, and the student code of conduct appeared in the FCPS Calendar Handbook distributed at the beginning of the school year. *Id.*, 245 A.3d at 34. The student code of conduct explained what sort of

---

(. . . continued)

https://www.ojp.gov/pdffiles1/ojjdp/fs200012.pdf, archived at https://perma.cc/M7RV-QS7U.

misconduct warranted a suspension. *Id.*, 245 A.3d at 34. For example, assault may lead to "'suspension pending parent conference,' 'short term out of school suspension,' 'long term out of school suspension,' or 'extended out of school suspension.'" *Id.*, 245 A.3d at 34 (citation omitted).

The Court rejected S.F.'s claim that the no-suspension condition was impermissibly vague because it vested the determination of its violation in a third party. *Id.* at 58, 245 A.3d at 35. The Court noted that conditions of probation often involved discretionary determinations by third parties, such as probation officers who must decide whether a party's conduct constitutes a parole violation. *Id.*, 245 A.3d at 35 (citing *Hudgins v. State*, 292 Md. 342, 344, 438 A.2d 928, 929 (1982); *Russell v. State*, 221 Md. App. 518, 523–24, 109 A.3d 1249 (2015); *Wiseman v. State*, 72 Md. App. 605, 608, 531 A.2d 1311, 1313 (1987)). A school administrator's power to suspend, while discretionary, according to the Court, was constrained by the student code of conduct. *Id.* at 59, 245 A.3d at 35.

The Court was also unpersuaded that evidence of Black students being disproportionately suspended rendered the no-suspension condition impermissibly vague. *Id.*, 245 A.3d at 36. The Court assumed the truth of S.F.'s argument that suspensions occur too frequently and disproportionately against Black students. *Id.*, 245 A.3d at 36. Like the juvenile court, the Court reasoned that if S.F. experienced discrimination or arbitrary treatment, then the probation officer, followed by the juvenile court, would have an opportunity to assess the validity of the suspension. *Id.*, 245 A.3d at 35. Based on the "policies and procedures defined by [FCPS'] code of conduct," the Court concluded that

the no-suspension condition of probation was sufficiently definite and certain. *Id.* at 60, 245 A.3d at 36.

The Court also found that FCPS' student code of conduct provided sufficient "procedural safeguards" when imposing a suspension. *Id.*, 245 A.3d at 36. The Court noted that the FCPS student code of conduct required prior notice and description of charges against any student facing suspension, which was also documented in the student information system. *Id.*, 245 A.3d at 36. FCPS policy also directed school personnel to use positive behavioral interventions before suspension, and that only a school administrator may impose a suspension. *Id.*, 245 A.3d at 36. The Court also explained that a student suspension does not automatically violate the no-suspension condition of probation because the State must prove before a juvenile court that the student violated the terms of probation. *Id.* at 61, 245 A.3d at 36–37.

The Court affirmed the juvenile court's imposition of the no-suspension condition of probation. Thereafter, S.F. filed a petition for writ of *certiorari*, which we granted. *In re: S.F.*, 474 Md. 632, 255 A.3d 169 (2021).

## DISCUSSION

### Standard of Review

A juvenile court possesses "broad authority" to impose conditions of probation. *Bailey v. State*, 355 Md. 287, 294, 734 A.2d 684, 687 (1999); Cts. & Jud. Proc. § 3-8A-19(d)(1) ("In making a disposition on a petition under this subtitle, the court may: . . . [p]lace the child on probation . . . upon terms the court deems appropriate[.] . . ."). Similar to the discretion of a circuit court in imposing conditions of probation in a criminal matter,

10

the discretion afforded to a juvenile court is "broad but it is not boundless." *Cooley v. State*, 385 Md. 165, 175, 867 A.2d 1065, 1071 (2005) (quoting *Nelson v. State*, 315 Md. 62, 70, 553 A.2d 667, 671 (1989)); *In re Roger S.*, 338 Md. 385, 393, 658 A.2d 696, 700 (1995) (noting "that the Juvenile Causes Act is to be construed liberally to achieve its purposes," but "[e]ven a remedial statute should not be construed so broadly as to create the possibility of 'results that are unreasonable, illogical, or inconsistent with common sense'") (citations and other marks omitted).

The exercise of this broad authority is reviewed for abuse of discretion. *In re Elrich S.*, 416 Md. 15, 30–31, 5 A.3d 27, 35–36 (2010) ("In a juvenile delinquency matter . . . the [juvenile] court's ultimate decision, however, will not be disturbed unless 'there has been a clear abuse of discretion.'") (quoting *In re Yve S.*, 373 Md. 551, 586, 819 A.2d 1030, 1051 (2003)) (other citations omitted); *see also Meyer v. State*, 445 Md. 648, 663, 128 A.3d 147, 156 (2015) (applying the abuse of discretion standard of review to conditions of probation in a criminal matter). An abuse of discretion occurs when the juvenile court, as with any court, "exercises discretion in an arbitrary or capricious manner or when [the court] acts beyond the letter or reason of the law." *Cooley*, 385 Md. at 175, 867 A.2d at 1071 (citation omitted); *see also In re Adoption of Jayden G.*, 433 Md. 50, 87, 70 A.3d 276, 297–98 (2013) (stating that a juvenile court abuses its discretion if its ruling "'does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective.'") (quoting *King v. State*, 407 Md. 682, 697, 967 A.2d 790, 799 (2009)) (citation omitted).

11

## The Contentions of the Parties

As a threshold issue, S.F. argues that this Court should reach the merits of the appeal because it would provide valuable guidance to the "many children who may be subject to no-suspension conditions of probation" and "to address and correct racial disparities in our justice system." (Citation omitted).

S.F. acknowledged his case was moot in the petition for writ of *certiorari*, but the State failed to contest the issue of mootness in its answer. In the past, according to Petitioner, this Court rejected belated efforts by the Respondent to dismiss a case for mootness.

According to S.F., the State also misstated the scope of the record by arguing this Court should avoid addressing the issue of a no-suspension condition of probation until a more complete factual record is presented on appeal. The State agrees that Black students and students with disabilities are disproportionately targeted for suspension, and according to S.F., the record reflects that S.F. is a Black student, was diagnosed with a disability, and received accommodations at school through an individualized education program.[10] Addressing the merits of the case, according to S.F., would allow this Court to determine whether the no-suspension condition of probation impermissibly exposes S.F. and similarly situated students to arbitrary and capricious punishment.

---

[10] "The terms 'individualized education program' or 'IEP' means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with [20 U.S.C. § 1414(d)]." *John A. v. Bd. of Educ. for Howard Cty.*, 400 Md. 363, 371 n.8, 929 A.2d 136, 141 n.8 (2007) (citation omitted).

12

S.F. also asserts that the Court has been fully briefed on the issue by both parties. In addition, a total of twenty national and local organizations have filed two *amicus* briefs on the merits. According to S.F., this Court should reach the merits.

On the merits, S.F. contends that the condition of probation requiring S.F. to attend school "without suspension" was unduly vague because "it failed to adequately apprise him (or the authorities responsible for enforcing the conditions) of what actions he must take or refrain from to avoid a violation." According to S.F., a term of probation must be clear, definitive, and capable of being understood by both the probationer and the person(s) responsible for monitoring compliance.

Suspensions, S.F. contends, lack procedural safeguards and may be imposed with "essentially unfettered discretion [by] the school authorities." Once a school official suspends a student, according to S.F., "the State only needs to prove that the child was suspended[,]" and "need not prove that the child engaged in any particular behavior[.]"

S.F. argues that because school suspensions disproportionately impact Black students and students with disabilities, the no-suspension condition of probation "import[s] this discriminatory treatment into juvenile court proceedings[.]" According to S.F., a child faces a "virtually impossible" challenge to affirmatively prove during a juvenile court hearing that the suspension was imposed arbitrarily. S.F. recommends that this Court reject no-suspension conditions of probation as not only impermissibly vague, but also a flawed practice to be avoided by juvenile courts.

The State counters that the case should be dismissed as moot pursuant to Md. Rule 8-602(c)(8), because S.F. successfully completed probation and there is no longer a

13

controversy between the parties regarding the no-suspension condition of probation. The State acknowledges several exceptions to the general rule that moot cases are dismissed, but argues the only exception potentially relevant to the case at bar—an issue of public importance which recurs frequently and evades judicial review—does not apply. While no-suspension conditions of probation recur frequently, according to the State, the issue will not evade judicial review because juvenile probation can last "years", and a juvenile court termination of probation will not necessarily moot the case.

The State also argues that this Court should dismiss the case because the record lacks evidence regarding how FCPS imposes suspension generally or specifically against S.F. Without a suspension in this case, there is no opportunity for this Court to determine how the juvenile court would assess an alleged violation of the no-suspension condition of probation. The State asks this Court to dismiss the case for mootness.

Assuming this Court reaches the merits, the State argues that the no-suspension condition of probation is neither inherently vague, nor rendered vague by permitting a third party, like a school administrator, to determine whether the behavior of a student warrants suspension. The State notes that determining compliance with probation conditions are routinely vested with third parties. Law enforcement officers may determine whether a probationer violated a law, or an employer may determine whether a probationer maintained gainful employment. In the case at bar, S.F. was to obey "all house rules" which necessitated a third party, the parent or guardian, to determine whether S.F. complied with the condition of probation. A no-suspension condition of probation, according to the State, is no more vague.

14

The State further contends that S.F. has conflated vagueness with process. According to the State, "[w]hether the 'no suspensions' condition is impermissibly vague does not depend upon whether a student is entitled to appeal the imposition of a suspension." Even if the process following a suspension weighed upon the determination of vagueness, the State argues that school suspension does not "*ipso facto* result in a violation of probation, and a violation of probation does not *ipso facto* result in the revocation of probation." According to the State, the juvenile court must determine, following a hearing, whether the student in fact violated the terms of probation, and whether a violation warrants revocation of probation. The hearing also provides the student an opportunity to argue that the suspension did not arise from willful conduct.

The State also points to several procedural safeguards at the state and local level that "provide detailed information about the due process afforded to a student accused of violating the code of conduct." State regulation pursuant to COMAR 13A.08.01.11(C)(2)(b) requires that students must be informed of reasons for a suspension and given an opportunity to respond prior to the suspension. FCPS codified its discipline policy at FCPS Regulation 400-08, which provides specific guidance on what behaviors may trigger a suspension. These publicly available documents demonstrate, the State asserts, that a suspension does not arise from "unfettered discretion" of school administrators, rather it follows from a specific set of proscribed behaviors that is provided to students and families every year.

Finally, the State agrees with S.F. that suspensions disproportionately impact Black students and students with disabilities, but disputes whether it renders the condition of probation impermissibly vague.

**Analysis**

**A. We exercise our discretion to reach the merits of the case despite S.F.'s completion of probation.**

The decision to dismiss a case for mootness is discretionary. Md. Rule 8-602(c) ("The court may dismiss an appeal if: . . . (8) the case has become moot."). "A question is moot 'if, at the time it is before the court, there is no longer any existing controversy between the parties, so that there is no longer an effective remedy which the court can provide.'" *Bd. of Physician Quality Assurance v. Levitsky*, 353 Md. 188, 200, 725 A.2d 1027, 1033 (1999) (quoting *Attorney Gen. v. Anne Arundel Cty. School Bus Contractors Ass'n, Inc.*, 286 Md. 324, 327, 407 A.2d 749, 752 (1979)).

"We have the constitutional authority [] to express our views on the merits of a moot case . . . in instances where[] the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest." *J.L. Matthews, Inc. v. Maryland-National Capital Park and Planning Comm'n*, 368 Md. 71, 96, 792 A.2d 288, 302–03 (2002) (citations and quotations omitted); *see also In re: O.P.*, 470 Md. 225, 249, 235 A.3d 40, 54 (2020) ("there are several exceptions to the mootness doctrine[]"). We have exercised discretionary authority to reach the merits of a moot case when "the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same

16

difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision[.] . . ." *Lloyd v. Bd. of Supervisors of Elections of Balt. Cty.*, 206 Md. 36, 43, 111 A.2d 379, 382 (1954).

In *Coburn v. Coburn*, this Court decided to address a moot issue involving an expired protective order issued pursuant to Maryland's domestic violence statute, because protective orders occur frequently but often "escape judicial review by this Court due to [their] limited duration." 342 Md. 244, 250, 674 A.2d 951, 954 (1996) (noting that protective orders, according to then Md. Code Ann., Family Law § 4-506(g), do not exceed 200 days in duration). This Court also explained that the mooted controversy "involves construction of a statute routinely applied by courts of this state, and our interpretation of it will assist judges in determining whether victims of abuse are in need of protection." *Id.*, 674 A.2d at 954. This Court concluded that the issue of domestic violence protective orders concerned an issue of public importance that would recur frequently and warranted review on the merits. *Id.*, 674 A.2d at 954.

Similar to *Coburn*, the issue of a no-suspension probation condition will likely reoccur, involve the same parties within the juvenile justice system (*e.g.*, students, public school systems, probation officers, the State's Attorney, and the juvenile court), likely evade judicial review, and concerns a matter of public interest—the nexus between juvenile justice and the public education system, sometimes referred to as "the school-to-prison pipeline."[11] In the 2018–19 school year, Maryland Public Schools recorded 67,608

---

[11] "The term 'school to prison pipeline' refers to the link between school failure,

(continued . . .)

suspensions, and at any given time, there are approximately 2,000 juveniles on probation in Maryland. Maryland Office of the Public Defender, *Probation*, http://dls.maryland.gov/pubs/prod/NoPblTabMtg/CmsnJuvRefCncl/MOPDProbationRecommendations.pdf (last visited Sept. 16, 2021), archived at https://perma.cc/YA9S-6H2T. Attending school regularly, along with not "[b]eing suspended from school[,]" are "standard" conditions of probation. Paul J. Hirschfield, *The Role of Schools in Sustaining Juvenile Justice System Inequality*, 28 Future of Children 11, 19 (2018), https://futureofchildren.princeton.edu/sites/futureofchildren/files/media/vol28issue1.pdf, archived at https://perma.cc/UW3A-EBCT. While the parties did not supply the exact number of juveniles in Maryland who have a no-suspension probation condition, these figures indicate the issue is likely to reoccur.

The issue of no-suspension conditions of probation also implicates the overlapping duties of the government "to assist children in becoming responsible and productive members of society[,]" while holding young offenders accountable for offenses committed in order to promote "[p]ublic safety and the protection of the community[.]" Cts. & Jud. Proc. § 3-8A-02(a). Public schools are entrusted with the educational and character

---

(. . . continued)

zero-tolerance discipline policies, exclusionary discipline, school-based arrest and the likelihood that youth who have these experiences in school will become involved in the juvenile, and later, adult criminal justice systems." Nicole Joseph, *The Civil Rights Crisis in Our Schools*, 49 Oct. Md. B.J. 12, 13 (Sept./Oct. 2016), https://nicolejosephlaw.com/wp-content/uploads/2020/06/Civil-Rights-in-School-MD-Bar-Journal-2016.pdf, archived at https://perma.cc/UA7X-UWB4 (citing *School to Prison Pipeline*, NAACP Legal Defense Fund (Feb. 16, 2018), https://www.naacpldf.org/case-issue/school-prison-pipeline/, archived at https://perma.cc/VG68-STR5).

development of young people, while the juvenile justice system, including probation officers, the State's Attorney, and juvenile courts, is tasked with the rehabilitation of young offenders. *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575, 580 (1965).[12] The case at bar clearly addresses a significant "relationship between government and its citizens[.]" *In re: O.P.*, 470 Md. at 249, 235 A.3d at 54 (citation omitted).

We reject the State's argument that "there is no reason to believe that this issue will continue to evade review[]" because juveniles can be on probation for years. While it is true that some juvenile conditions of probation may last for years, there are countless others, including the case at bar, which are terminated before the case reaches this Court. According to the Urban Institute, "the vast majority of youth probation terms can be completed in six months or less." Urban Institute, *Transforming Juvenile Probation* (Apr. 27, 2021), https://www.aecf.org/resources/transforming-juvenile-probation-terms, archived at https://perma.cc/CRD7-CYCM. Given the time it takes to resolve an appeal

---

[12] Cts. & Jud. Proc. § 3-802(a) defines the purposes of the juvenile justice system in pertinent part:

(1) To provide for the care, protection, safety, and mental and physical development of any child coming within the provisions of this subtitle;

(2) To provide for a program of services and treatment consistent with the child's best interests and the promotion of the public interest;

(3) To conserve and strengthen the child's family ties and to separate a child from the child's parents only when necessary for the child's welfare[.]

before the Court of Special Appeals and come before this Court,[13] it is likely that many no-suspension conditions for probation will evade review.

This issue also concerns a matter of public importance. The intersection between school discipline and the criminal justice system has captured the attention of the General Assembly, social science researchers, and in part, the Maryland Judiciary. In 2017, the General Assembly established the "Commission on the School-to-Prison Pipeline and Restorative Practices." Maryland Commission on the School-to-Prison Pipeline and Restorative Practices, *Final Report and Collaborative Action Plan* at 10 (Dec. 20, 2018), https://www.law.umaryland.edu/media/SOL/pdfs/Programs/ADR/STPP%20%20RP%20 Commission%20Final%20Report.pdf, archived at https://perma.cc/XF5C-548H. The report examined the "school-to-prison pipeline" that pushes a "student out of school and into the juvenile or criminal justice system[.]" *Id.* at 22 (citation omitted). Contributing factors include overly harsh discipline, biased disciplinary decisions, and segregated and under-resourced schools. *Id.*

The report highlighted how exclusionary discipline, like suspension, "has a disparate impact on students of color and students with disabilities. Black students in kindergarten through 12th grade nationwide were 3.8 times as likely to receive one or more out-of-school suspensions as White students []." *Id.* (citation omitted). In response to the work by the Commission, the General Assembly enacted Md. Code Ann., Education § 7-

---

[13] In the case at bar, S.F. first appeared before the circuit court sitting as a juvenile court on February 12, 2019. This Court granted *certiorari* on May 11, 2021, more than two years after a juvenile magistrate recommended the no-suspension condition of probation.

20

306, which requires each county board of education to review its disciplinary practices and policies and to encourage "restorative approaches" to student discipline.

The action taken by the General Assembly was consistent with empirical social science research that has found both implicit bias in how suspensions are administered and its disproportionate impact on Black students and students with disabilities. *See* Brief for The National Center for Youth Law et al. as Amici Curiae Supporting Petitioner, *In re S.F.*, 474 Md. 632, 255 A.3d 169 (2021) (No. 10, Sept. Term 2021) ("Black students are overrepresented in suspensions for all types of behaviors, and are more likely to be disciplined for 'less serious and more subjective reasons.' . . . White students tend to be disciplined for 'more objectively observable' offenses, like smoking or vandalism, [while] Black students tend to be disciplined for behaviors that are more 'subjective in nature[]' like disrespect, defiance, or noncompliance[,] . . . which do not require exclusion from school or justice system involvement.") (footnote and citations omitted).[14]

The issue also implicates ongoing efforts by the Maryland Judiciary to eliminate discrimination on the basis of race, background, or identity in the administration of justice. In 2020, the Maryland Judiciary formed the Committee on Equal Justice, whose purpose is to "build the knowledge and proficiencies of judges and judiciary personnel to strengthen

---

[14] We note that the record reflects that S.F. is a Black student and a student with a diagnosed disability. While no suspension occurred while S.F. was on probation in the case at bar, the general inequities of school suspension policies found by the Commission remain relevant for S.F., and similarly situated students, presently enrolled in public schools. *See, e.g.*, *In re: S.F.*, 249 Md. App. at 59 n.3, 245 A.3d at 35 n.3 (citing Lena V. Groeger et al., *Miseducation: Is There Racial Inequality at Your School?*, Pro Publica (Oct. 16, 2018), https://projects.propublica.org/miseduation/district/2400330, archived at https://perma.cc/X85C-63X6.

21

the judiciary's commitment to equal justice under law for all."  Maryland Judiciary, *Equal Justice Committee Information* (last visited Nov. 4, 2021), https://www.courts.state.md.us/equaljustice/committee, archived at https://perma.cc/V2C7-PDB4.  One of the specific objectives is to "[d]evelop considerations for how judges can improve sentencing to ensure equal justice."  Maryland Judiciary, *Sentencing Subcommittee Draft Interim Report and Recommendations for Equal Justice Committee's Consideration* (June 2021), https://www.courts.state.md.us/sites/default/files/import/ejc/pdf/sentencingupdate.pdf, archived at https://perma.cc/K3ZZ-NREY.

Amid ongoing efforts throughout state and local government to reform student disciplinary policies and procedures, this case could assist juvenile courts in assessing whether a suspension policy is impermissibly vague, thereby subjecting a student to arbitrary or capricious punishment.  "Accordingly, we decline to dismiss this appeal" for mootness.  *In re O.P.*, 470 Md. at 250, 235 A.3d at 55.

**B.  The juvenile court did not abuse its discretion by ordering no school suspensions as a condition of probation.**

The juvenile court system was developed in the twentieth century following "a national outcry against the resulting barbarism, as it appeared . . . to be, of treating children and juveniles the same as adults."  *In re Victor B.*, 336 Md. 85, 90, 646 A.2d 1012, 1014 (1994) (quoting *In re Johnson*, 254 Md. 517, 521–22, 255 A.2d 419, 421 (1969)) (quoting Fortas, *Equal Rights—For Whom?* 42 N.Y.U. L. Rev. 401, 405–06 (1967)).  Unlike the adult system, the juvenile court was designed to be more "informal and flexible in nature,

psychiatric and psychological assistance was sought, the rules of evidence were relaxed, and many proceedings were not open to the public." *Id.* at 91, 646 A.2d at 1014.

The purpose of the juvenile court system, when adjudicating cases involving children who have committed delinquent acts, was codified at Cts. & Jud. Proc. § 3-8A-02, which provides in pertinent part:

> (a) The purposes of this subtitle are:
>
>> (1) To ensure that the Juvenile Justice System balances the following objectives for children who have committed delinquent acts:
>>> (i) Public safety and the protection of the community;
>>> (ii) Accountability of the child to the victim and the community for offenses committed; and
>>> (iii) Competency and character development to assist children in becoming responsible and productive members of society;
>> \*\*\*
>> (4) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest[.]
>> \*\*\*
>> (8) To provide judicial procedures for carrying out the provisions of this subtitle.

One of the judicial procedures expressly provided by the statute is ordering probation:

> In making a disposition on a petition under this subtitle, the [juvenile] court may . . . [p]lace the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person, *upon terms the court deems appropriate*, including community detention.

Cts. & Jud. Proc. § 3-8A-19(d)(1) (markings omitted) (emphasis added).

Juvenile courts have broad discretion in establishing conditions of probation. Cts. & Jud. Proc. § 3-8A-19(d)(1); *see also Moore v. Miley*, 372 Md. 663, 680, 814 A.2d 557,

23

568 (2003) (discussing the jurisdictional provisions applicable to juvenile cases, which "should be construed in a manner to maximize the juvenile court's flexibility and ability to exercise its discretion"). "[A] juvenile court may place a child on probation . . . 'upon terms the court deems appropriate. . . .'" *In re W.Y.*, 228 Md. App. 596, 611, 142 A.3d 602, 611 (2016) (citation omitted); Md. Rule 11-101(b)(5) (2021)[15] ("'Probation' means a status created by a court order under which a child adjudicated to be delinquent . . . is to remain subject to supervision of the Court under conditions the Court or the agency designated by it deems proper, but is not removed from his home."). Similar to probation for adults, probation for juveniles represents a bargain.[16] *See Scott v. State*, 238 Md. 265, 275, 208 A.2d 575, 580 (1965) (noting probation permits a defendant to retain his or her freedom so long as the defendant conforms "with established communal standards and the safety of society"). As with any juvenile delinquency disposition, juvenile probation must

---

[15] Effective January 1, 2022, the definition of probation applicable to delinquency proceedings is codified without substantial change at Md. Rule 11-402(b)(5) ("'Probation' means a status created by a court order under which a child adjudicated to be delinquent is to remain subject to supervision of the court under conditions the court, or the agency designated by it, deems proper, but is not removed from his home.").

[16] Unlike adult probation, juvenile probation is not considered a punishment for a crime, nor does juvenile probation follow a conviction. *Compare Doe v. Dep't of Pub. Safety and Corr. Servs.*, 430 Md. 535, 561, 62 A.3d 123, 139 (2013) ("It is well-settled in this State that [adult] probation is a form of a criminal sanction.") (citation omitted), *with In re Ann M.*, 309 Md. 564, 570, 525 A.2d 1054, 1057 (1987) ("Under the Juvenile Causes Act, no disposition of a juvenile petition, whether of a delinquent, CINA or a CINS, may result in a criminal conviction.") (citation omitted); *In re Appeal Misc. No. 32*, 29 Md. App. 701, 704, 351 A.2d 164, 165 (1976) (citation omitted) ("Judges in juvenile cases do not think in terms of guilt, but rather in terms of the need of the child for protection, guidance, or rehabilitation.").

balance the "competing objectives" of public safety, accountability, and rehabilitation. *Moore*, 372 Md. at 673–74, 814 A.2d at 564.

The exercise of a juvenile court's discretion in establishing a condition of probation, similar to establishing a condition of probation for an adult, is "limited in several important respects[.]" *Allen v. State*, 449 Md. 98, 111, 141 A.3d 194, 203 (2016).[17] "[A] condition of probation must not be vague, indefinite or uncertain, conditions of probation must not be arbitrary or capricious, conditions of probation must be constitutional, conditions of probation must not exceed statutory limits, and conditions of probation must be reasonable and have a rational connection to the offense[.]" *Id.*, 141 A.3d at 203 (citations and quotations omitted).

When assessing conditions of probation, this Court has held that generality of terms does not equate to vagueness. In *Meyer v. State*, this Court explained that a condition of probation term is not vague if the court provides the defendant with reasonable and specific guidance regarding the condition and "the defendant understands what is required of him [or her]." 445 Md. 648, 680, 128 A.3d 147, 166 (2015). In *Meyer*, the circuit court restricted Meyer's driving privileges as a condition of probation following a series of motor

---

[17] The United States Supreme Court held in *In re Gault* that the constitutional guarantee of due process applies to juvenile proceedings. 387 U.S. 1, 13, 87 S. Ct. 1428, 1436 (1967). Conditions of probation that are vague or overbroad violate due process. Wayne R. LaFave et al., *Probation Conditions and Constitutional Rights*, 6 Crim. Proc. § 26.9(b) (4th ed. 2021); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). We accordingly apply principles for assessing vague, overbroad, indefinite, arbitrary, or unconstitutional conditions of probation for adults to conditions of probation for juveniles.

vehicle violations. *Id.* at 658, 128 A.3d at 153 ("[Meyer] will not be allowed to operate a motor vehicle . . . during the time of any probation[]").

This Court determined that the circuit court did not abuse its discretion in fashioning a "no-driving" special condition of probation. *Id.* at 681, 128 A.3d at 166. The circuit court appropriately considered the "facts and circumstances" of Meyer's multiple driving violations, including one incident that resulted in the death of another. This Court found that the "no-driving" condition was designed "to keep Meyer, a recidivist, from committing any further motor vehicle violations." *Id.*, 128 A.3d at 167. Despite the brief and general phrasing, this Court concluded that the concise "no-driving condition was unambiguous, specific, and *Meyer clearly understood the standard of conduct required. . . .*" *Id.*, 128 A.3d at 167 (emphasis added). Under the circumstances, the circuit court did not need to say more than "[Meyer] will not be allowed to operate a motor vehicle[]" for Meyer to appreciate what conduct would violate the condition of probation. *Id.* at 658, 128 A.3d at 153.

The no-suspension condition of probation, similar to the "no-driving" condition of probation in *Meyer*, reasonably apprised S.F. of "what is required of him[]" under the circumstances. *Id.* at 680, 128 A.3d at 166. The juvenile magistrate was presented with "a long history of behavioral incidents in school." S.F. was suspended once in 2011 (at age 5), once during the 2016–17 school year, four times during the 2017–18 school year, and two times during the 2018–19 school year—following the incidents that led to the case at bar. A DJS report further documented "a history of problematic behavior in school . . . [and] rapid accumulating of charges[.]" Like the circuit court in *Meyer*, the juvenile

26

magistrate in the case at bar was aware of the facts and circumstances of S.F.'s case and imposed a no-suspension condition of probation to keep S.F. from further and *repeated* disciplinary problems at school. The no-suspension condition provided an easily understandable expression of the "standard of conduct required" for a middle school student. *Meyer*, 445 Md. at 681, 128 A.3d at 167. S.F. was already familiar with the FCPS code of conduct, the process of suspensions, and what past behavior had led to suspension. The condition of probation, while phrased generally, gave reasonable indication of what behavior was required under the circumstances.

The no-suspension condition was also consistent with the "[o]bey all house rules" condition of probation. The juvenile court ordered both conditions of probation because of recent instances of behavioral misconduct, and the conditions worked in tandem to inform S.F. that his conduct must conform with behavioral expectations at school and at home. The juvenile court, like the circuit court in *Meyer*, did not need to provide any more specific guidance than "attend school regularly without any . . . suspensions" in order for S.F. to understand what was required of him under the circumstances.

Our previous cases have demonstrated that allowing a third party, such as a school administrator in this case, to take action that determines compliance with the condition of probation does not make the condition vague. In *Hudgins*, a condition of probation required the defendant to "work with the State Police until there was satisfaction for what he was charged with, *until the State Police were satisfied* that he had worked out for what he was charged with." 292 Md. at 344, 438 A.2d at 929 (emphasis added). This Court rejected the defendant's contention that the condition was vague, *id.* at 348, 438 A.2d at

931, and explained that "the nature of the probationary penalty is such that the circumstances of a case . . . render it desirable, or perhaps necessary, that the condition of probation be expressed in somewhat general terms." *Id.*, 438 A.2d at 931. This Court stated "there can be little doubt that [the defendant] understood" the meaning of the condition of probation, as it plainly meant that he must supply the State Police with information "reasonably available to him concerning criminal activity of others[.]" *Id.* at 349, 438 A.2d at 931. The fact that a third party, namely the State Police, had wide discretion in determining what actions the defendant needed to take did not render the condition of probation vague. *Id.*, 438 A.2d at 931 (noting defendant "agreed to comply with all reasonable instructions given by the police in furtherance of his role as informant[]"). It would have been impractical for the circuit court to have enumerated specific acts of cooperation when the assistance required by the State Police would vary based on the needs of the case.

Similar to *Hudgins*, the no-suspension condition may have been general because it left enumerating the specific suspension-worthy behaviors to FCPS, but it was not "too vague, indefinite, and uncertain to be given *any* constriction or application." *Id.* at 348, 438 A.2d at 931 (emphasis added). FCPS' code of conduct is detailed and prescriptive in defining suspension-worthy behavior. For example, S.F. was found to have committed second-degree assault against another student. According to FCPS Reg. No. 400-08, assault is defined as "[t]he unlawful attempt, coupled with a present ability, to commit a violent physical attack upon a person. This includes threatening language or gestures without actually touching another person." Frederick County Public Schools, Reg. No.

28

400-08 (Mar. 15, 2018) ("FCPS Reg. No. 400-08"). Conduct that satisfies this definition of assault triggers a "tier 2" response, which includes behavioral interventions such as a parent-teacher conference, loss of privileges, temporary removal from class, and in-school suspension. Depending on severity and practicality, the school may impose a short-term or long-term suspension as well.

The discretion built into the FCPS code of conduct regarding when a teacher or school administrator institutes discipline does not make the no-suspension condition of probation vague. Similar to how the expectations of the police informant varied based on the needs of law enforcement within a particular case in *Hudgins*, the circumstances in which certain behavior warrants discipline, including suspension, will vary based on the dynamics of student behavior within a school environment. What behavior is expected of students will vary depending on the circumstances.[18] Teachers and school administrators, like the State Police in *Hudgins*, are in a better position than the juvenile court to specify what conduct is required at different points during the school day. The discretion afforded to school personnel in determining whether particular behavior violated the student code of conduct does not make the no-suspension condition of probation impermissibly vague.[19]

---

[18] FCPS Reg. No. 400-08 defines "Disruptive Behavior" as "[a]ctions which interfere with the effective operations of the school." There are numerous situations in which conduct in one circumstance may constitute "Disruptive Behavior" but not another. As one example, boisterous behavior may be tolerated during recess, but not during a standardized test.

[19] The discretion afforded to school personnel does not dilute the specific behavioral expectations provided in the student code of conduct. The no suspension condition of probation may be generally worded, but it provides highly detailed and "'specific rules

(continued . . .)

In response, S.F. cited several cases from California for the proposition that conditions of probation are vague when third parties have discretion in assessing compliance. We find the cases cited by S.F. distinguishable based on whether the condition of probation provides advance notice of what behavior is required by the probationer, and therefore do not support the proposition that permitting a third party to determine compliance with a condition of probation necessarily renders the condition vague. In *People v. Pirali*, 159 Cal. Rptr. 3d 335, 344 (Ct. App. 2013), the court found a condition of probation that prohibited purchase or possession of pornographic or sexually explicit materials as defined by the probation officer to be vague. The condition was vague, according to the court, because the "condition does not sufficiently provide defendant with *advance knowledge* of what is required of him[,]" as the defendant may not learn his conduct was violative of the terms of probation only until "*after* defendant already possesses the material." *Id.* (emphasis added).

Unlike *Pirali*, S.F. knew *in advance* what behavior was required of him. The no-suspension condition of probation informed S.F. that he must adhere to school rules and not behave in a manner, as articulated by the FCPS code of conduct, that would warrant

---

(. . . continued)

designed to govern the conduct of the [student] within the ambit' of a general condition imposed by the [juvenile] court." *Russell v. State*, 221 Md. App. 518, 529, 109 A.3d 1249, 1256 (2015) (quoting *Costa v. State*, 58 Md. App. 474, 82, 473 A.2d 942, 946 (1984)). We are unaware of any Maryland appellate case that considered a condition of probation, subject to clear and definite rules of conduct, to be vague. *Smith v. State*, 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986); *Hudgins*, 292 Md. at 348; 438 A.2d at 931; *Douglas v. State*, 130 Md. App. 666, 674, 747 A.2d 752, 757 (2000).

suspension. Further unlike the defendant in *Pirali*, S.F. would not have to wait until a meeting with his probation officer to discover what types of behavior would violate the no-suspension condition of probation.[20]

In another case cited by S.F., *People v. Turner*, 66 Cal. Rptr. 3d 803, 807 (Ct. App. 2007), the court found that a probation condition requiring the defendant "not [to] possess any sexually stimulating or sexually oriented material as deemed inappropriate by [the] probation officer" was an "inherently imprecise and subjective standard." According to the court, the retroactive determination by the probation officer of what constitutes sexually explicit material rendered the condition of probation vague. *Id.* at 806. The court accordingly modified the condition so the probation officer must inform the defendant in advance about which materials would violate the terms of probation. *Id.* at 807. In the case at bar, FCPS, by virtue of its student code of conduct, informed S.F. *in advance* of the type of conduct that would trigger a suspension. The cases cited by S.F. are distinguishable from the case at bar because the no-suspension condition of probation provided S.F. with sufficient advance notice of what behavior was required.

We accordingly hold that the no-suspension condition of probation was not impermissibly vague because it reasonably apprised S.F. of what behavior was required of him under the circumstances.

---

[20] We note a distinction between the type of behavior that warrants a suspension and whether a student in fact acted in a way that warranted suspension. The juvenile court must determine whether a student willfully violated the no-suspension condition of probation. *See infra* slip op. at 31.

31

**C. Whether a probationer willfully violated a condition of probation is a distinct issue from vagueness and must be determined by the juvenile court before revocation of probation.**

A generally worded condition of probation does not mean a probationer may be found in violation of probation "from factors beyond his [or her] control and through no fault of his [or her] own." *Hudgins*, 292 Md. at 349, 438 A.2d at 931. A school suspension does not automatically result in a violation of probation, because whether a violation of a condition of probation occurred, is a question of fact to be determined by the juvenile court. *Id.* at 348, 438 A.2d at 931. Therefore, assuming S.F., or another similarly situated student, was suspended, there are two layers of procedural safeguards designed to protect against arbitrary or capricious punishment.

First, when a third-party informs a probation officer that a condition of probation has been violated, the probation officer is not automatically and immediately bound to report the purported violation to the juvenile court. A probation officer has some discretion in reporting a purported violation to the juvenile court. *See State v. Alexander*, 467 Md. 600, 607, 226 A.3d 1, 5 (2020) (describing a similar reporting procedure for adult probation). Maryland Rule 11-116, at the time of proceedings,[21] set forth the procedure for initiating violation of probation proceedings:

> **a. Revisory Power.** An order of the court may be modified or vacated if the court finds that action to be in the best interest of the child or the public, except in cases involving commitment of a child to the Maryland Department of Health for placement in a State mental hospital. In cases involving such commitment the court shall proceed as provided in Rule 11-115.

---

[21] The rule has been recodified at Md. Rule 11-423 and went into effect on January 1, 2022.

**b. Sua Sponte or on Petition.** The court may proceed under section a. of this Rule on its own motion, or on the petition of any party or other person, institution or agency having supervision or custody of the respondent, setting forth in concise terms the grounds upon which the relief is requested. If the court proceeds on its own motion, the order shall set forth the grounds on which it is based.

**c. Hearing--When Required.** If the relief sought under section a. of this Rule is for revocation of probation and for the commitment of a respondent, the court shall pass an order to show cause why the relief should not be granted and setting a date and time for a hearing. The clerk shall cause a copy of the petition and Show Cause Order to be served upon the parties. In all other cases, the court may grant or deny the relief, in whole or in part, without a hearing.

**d. Conduct of Hearing.** In the interest of justice, at any hearing held pursuant to this Rule the court may decline to require strict application of the rules in Title 5, except those relating to the competency of witnesses.

Second, once the juvenile court is made aware of a purported violation and has docketed proceedings against probationer, the State has the burden in establishing, by a preponderance of evidence, that a violation of a condition of probation has occurred. Cts. & Jud. Proc. § 3-8A-18(e); *see also Hammonds v. State*, 436 Md. 22, 31, 80 A.3d 698, 703 (2013) (noting a similar standard for revocation of adult probation). The juvenile court then must determine whether a violation of a condition of probation warrants revocation of probation. *Moore*, 372 Md. at 668, 814 A.2d at 561 (noting that the juvenile court found the child in violation of probation); *Hammonds*, 436 Md. at 31, 80 A.3d at 703 (describing a similar process for adult probation).

In the case at bar, part of the *prima facie* case of a violation of the no-suspension condition of probation necessarily requires proof of S.F.'s alleged misbehavior and an

33

explanation from a school administrator for why it warranted suspension. This information

must be recorded by school personnel according to FCPS Reg. No. 400-08:

> All administrative imposed discipline will be documented in the student information system. All discipline that results in suspension (for 1 or more days) will be maintained as part of the individual student's permanent record. The discipline record *will consist of a description of the student's behavior that resulted in the disciplinary action* and a copy of the correspondence sent to the parent(s) informing them of the student's suspension or expulsion.

(Emphasis added).

S.F. may also present a defense during the violation of probation hearing that the

suspension "resulted from factors beyond his control and through no fault of his own."

*Hudgins*, 292 Md. at 349, 438 A.2d at 931. During the hearing before the juvenile court,

S.F. raised a concern about being suspended because of the misconduct of other students,

such as another student starting a fight. If such an incident occurred, S.F. could argue that

while he may have retaliated and received a suspension, it was not a willful violation of a

condition of probation. *See Hammonds*, 436 Md. at 36–37, 80 A.3d at 706–07 ("The

inquiry at the probation revocation proceeding, then, should have been whether the

evidence showed, by a preponderance of the evidence, that Petitioner willfully" violated a

condition of probation). We agree with the Court of Special Appeals that the "possibility

that a suspension could be imposed too quickly or arbitrarily would, when it happens,

represent a failure of execution" by school administrators, *In re: S.F.*, 249 Md. App. at 59,

245 A.3d at 36, and in such a circumstance, should lead the juvenile court to find that the

suspension arose "from factors beyond his [or her] control and through no fault of his [or

her] own." *Hudgins*, 292 Md. at 349, 438 A.2d at 931.

34

## CONCLUSION

The juvenile court did not abuse its discretion in determining S.F.'s "no-suspension" condition of probation was not vague because it reasonably informed S.F. of the behavior required while on probation. Whether a suspension was arbitrarily or capriciously imposed against a student based on race, disability, or other factor, did not bear on the vagueness of the no-suspension condition of probation in this case, and generally is a question of fact to be determined by the juvenile court when deciding if a violation of a condition of probation resulted from factors beyond the control or fault of a student.

For the reasons previously explained, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

35

IN THE COURT OF APPEALS

OF MARYLAND

No. 10

September Term, 2021

_____

IN RE: S.F.

_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

_____

Dissenting Opinion by Watts, J.

_____

Filed: February 3, 2022

Respectfully, I dissent. The Majority concludes that making a school's discretionary decision to suspend a child a violation of probation is not an impermissibly vague condition of probation. See Maj. Slip Op. at 2, 31. In so concluding, the Majority appears to acknowledge that children may be subject to disparate treatment with respect to school decisions imposing suspension. See Maj. Slip Op. at 34-35. Nonetheless, the Majority holds:

> Whether a suspension was arbitrarily or capriciously imposed against a student based on race, disability, or other factor, d[oes] not bear on the vagueness of the no-suspension condition of probation in this case, and generally is a question of fact to be determined by the juvenile court when deciding if a violation of a condition of probation resulted from factors beyond the control or fault of a student.

Maj. Slip Op. at 35.

Essentially, the Majority indicates that to avoid being found in violation of probation as a result of a suspension that may have been arbitrarily or capriciously imposed based on race, disability, or other factors, a juvenile must show as a matter of fact that the suspension was based on factors that were beyond the juvenile's fault or control.[1] See Maj. Slip Op. at 35. Unlike the Majority, I would not leave in place the no-suspension condition of probation and require that to avoid a violation of probation a juvenile shoulder the burden of proving that a suspension resulted from factors beyond the juvenile's control or fault, such as race, disability, or other factors.

I would reverse the judgment of the Court of Special Appeals and hold that a

---

[1]Although the majority opinion does not expressly impose the burden of proof on the juvenile, it is plain that the juvenile would bear the burden as the State without a clear mandate from this Court or other authority obviously would not.

condition of probation in juvenile court indicating that a child may have no suspensions is impermissible because the condition fails to provide a juvenile with adequate notice of the conduct that will result in a violation of probation. In my view, a juvenile court could accomplish the same goals that a no-suspension condition of probation is designed to ensure—namely, that a child engages in appropriate behavior in a school setting and protecting the public—by imposing a condition of probation that would require a child to report any suspension immediately to a probation officer.

A probation condition requiring that a child attend school regularly without suspension fails to provide adequate notice to a child of what conduct will constitute a violation of probation because the child's conduct is not determinative of whether the child will receive a suspension at school but rather the determination is subject to very broad discretionary decision-making authority by school officials. Compounding the concern, in this case, S.F., Petitioner, and *amici curiae* have contended that decisions concerning school suspensions result in disparate outcomes based on circumstances such as race and disability. This is a premise that the Majority seemingly accepts.[2] Because school

---

[2]The Majority states:

> We agree with the Court of Special Appeals that the "possibility that a suspension could be imposed too quickly or arbitrarily would, when it happens, represent a failure of execution" by school administrators, *In re*[] *S.F.*, 249 Md. App. [50,] 59, 245 A.3d [30,] 36 [(2021)], and in such a circumstance, should lead the juvenile court to find that the suspension arose "from factors beyond his [or her] control and through no fault of his [or her] own." *Hudgins*[ *v. State*], 292 Md. [342,] 349, 438 A.2d [928,] 931 [(1982) (cleaned up)].

Maj. Slip Op. at 34 (some alterations in original).

suspensions are discretionary decisions by school officials that based on the same conduct may vary from child to child, a no-suspension condition of probation does not provide sufficient notice to a child of the conduct that will result in a violation of probation.

Permitting the exercise of discretion in the decision-making process for school suspensions is not wrong or improper. It is necessary because children are different and their conduct is different and it would not be possible or desirable for schools to impose a rigid form of school discipline because conduct in schools should be handled on an individual basis. The issue is that, because decisions about children's conduct will result in different outcomes, those outcomes should not be the basis of a violation of probation; rather, the juvenile's conduct should be the basis for alleging a violation of probation.

The school process for suspensions is set forth in both the Code of Maryland and Code of Maryland Regulations ("COMAR"). COMAR 13A.08.01.11B(10) generally defines a "suspension" as "the application of extended suspension, in-school suspension, short-term suspension, or long-term suspension." An "in-school suspension" "means the removal within the school building of a student from the student's current education program for up to but not more than 10 school days in a school year for disciplinary reasons by the school principal." COMAR 13A.08.01.11B(4). A "short-term suspension" is "the removal of a student from school for up to but not more than 3 school days for disciplinary reasons by the principal." COMAR 13A.08.01.11B(9). COMAR 13A.08.01.11B(5) defines a "long-term suspension" as "the removal of a student from school for a time period between 4 and 10 school days for disciplinary reasons by the principal." An "extended suspension" is "the exclusion of a student from a student's regular program for a time

period between 11 and 45 school days," and may occur only under certain circumstances. COMAR 13A.08.01.11B(3).

In-school, short-term, and long-term suspensions (*i.e.*, suspensions for ten school days or less) may be imposed for a wide variety of conduct at the discretion of the school principal. Md. Code. Ann., Educ. (1978, 2018 Repl. Vol.) ("ED") § 7-305(a)(1) provides that, with limited exceptions, "in accordance with the rules and regulations of the county board, each principal of a public school may suspend for cause, for not more than 10 school days, any student in the school who is under the direction of the principal."

For suspensions of ten school days or less, in addition to imposition of such a suspension being subject to the discretion of the principal, little process is required. For example, ED § 7-305(a)(2) and (a)(3) require that "[t]he student or the student's parent or guardian promptly shall be given a conference with the principal and any other appropriate personnel during the suspension period[,]" as well as "a community resources list provided by the county board[.]" No right to appeal such a suspension is provided.[3]

---

[3]Insofar as an extended suspension is concerned, except as provided in ED § 7-305.1, "at the request of a principal, a county superintendent may suspend a student for more than 10 school days[.]" ED § 7-305(c). An extended suspension may be imposed where the superintendent or designated representative has determined that "[t]he student's return to school prior to the completion of the suspension period would pose an imminent threat of serious harm to other students and staff" or "[t]he student has engaged in chronic and extreme disruption of the educational process that has created a substantial barrier to learning for other students across the school day, and other available and appropriate behavioral and disciplinary interventions have been exhausted." COMAR 13A.08.01.11B(3)(a). The superintendent or designated representative must "limit[] the duration of the exclusion to the shortest period practicable" and the school system must "provide[] the excluded student with comparable educational services and appropriate behavioral support services to promote successful return to the student's regular academic program." COMAR 13A.08.01.11B(3)(b), (c).

In Frederick County, consistent with COMAR 13A.08.01.11B, suspensions for ten school days or less are determined by the school principal. See Frederick Cty. Pub. Schools Reg. No. 400-04(II)(D)-(F), (I) (amended Nov. 15, 2017), available at https://apps. fcps.org/legal/documents/400-04 [https://perma.cc/WQ8L-348A]. According to the current version of Reg. No. 400-08, in Frederick County Public Schools, the consequences for various conduct may include a wide range of discipline, ranging from a classroom response consisting of verbal correction to detention, suspension, or expulsion. See Frederick Cty. Pub. Schools Reg. No. 400-08(II)(E) (amended Oc. 28, 2020), available at https://apps.fcps.org/legal/documents/400-08 [https://perma.cc/N5EY-TKEC]. Reg. No. 400-08(II)(B) provides that "[i]t is expected that prior to imposing disciplinary measures, positive behavioral interventions and supports should be considered as practicable." The regulation states that "[w]hile school principals/designees have discretion in imposing discipline based upon the facts of the investigation and the needs of the students, long term suspensions and requests for extended suspensions/expulsions should be considered as last resort options."[4]

Reg. No. 400-08(II)(E) includes a table identifying "Tiers of Interventions" and the wide range of responses available to school officials for an offense falling under each tier. According to the Majority, a no-suspension condition of probation is "not too vague, indefinite, and uncertain" to be given application because the "FCPS' code of conduct is

_____

[4]Like Reg. No. 400-04(II)(D), (E), and (I), Reg. No. 400-08(II)(E) defines in-school, long-term, and short-term suspensions as removals of students by the school principal for disciplinary reasons.

detailed and prescriptive in defining suspension-worthy behavior." Maj. Slip Op. at 28 (cleaned up). The Majority indicates that assault is conduct that "triggers a 'tier 2' response" under Reg. No. 400-08, making a wide range of interventions possible, "such as a parent-teacher conference, loss of privileges, temporary removal from class, and in-school suspension[,]" as well as a short-term or long-term suspension. Maj. Slip Op. at 29. It appears that under the Majority's reasoning because assault is described as conduct for which a student could be suspended it does not matter that other possible consequences are also available and that a suspension could be imposed for reasons not related to the student's conduct.

In actuality, under Reg. No. 400-08(II)(F), "assault" is conduct that warrants either a Tier 2 or Tier 3 response. A Tier 2 response for assault could consist of over twenty possible consequences ranging from, among other things, community service, detention, development of a behavior contract or behavior intervention plan, loss of privileges, a parent/administrator conference, to in-school removal or an in-school suspension. See Reg. No. 400-08(II)(E). A Tier 3 response could involve one of five actions: suspension pending a parent conference, short-term out-of-school suspension, long-term out-of-school suspension, extended out-of-school suspension, or expulsion. See id. In other words, the regulation confirms that, as with other misconduct in school, where assault is concerned a school principal has a wide range of discretion as to which disciplinary response to choose from and impose, and a juvenile would have no control over whether or how a principal would exercise his or her discretion at any time.

Provisions governing school suspensions provide no notice to a juvenile as to the

- 6 -

conduct that will actually result in a suspension and afford little process for infractions that result in suspensions of ten school days or less. Regardless of whether a suspension is labeled a minor or extended suspension, under the language of the probation order at issue in this case, a suspension would constitute a violation of probation. What the discretionary school suspension process demonstrates is that certain conduct by one child at one school could result in a suspension and hence a violation of probation while the same conduct by a different child at another school (or even the same school) would not. The reality is that different schools or one school may decide to take different actions with respect to the same conduct by different children.

The Majority concludes that discretionary decision-making with respect to school suspensions does not render a no-suspension condition of probation impermissibly vague because there are other conditions of probation that similarly require decisions by third parties before a probationer's conduct would be deemed a violation. See Maj. Slip Op. at 29-30. In support of this proposition, the Majority relies on the case of Hudgins v. State, 292 Md. 342, 438 A.2d 928 (1982), for the analogy that because a probationer may be ordered to cooperate with a law enforcement officer (giving the officer the discretion to determine whether the cooperation was satisfactory), school officials having discretion with regard to the imposition of a suspension does not render a no-suspension condition of probation impermissibly vague. See Maj. Slip Op. at 27-29. From my perspective, though, for a number of reasons, the type of condition relied on by the Majority for the comparison is very distinct from the circumstances of school suspensions. To be sure, the condition in Hudgins that the Majority discusses has an element of third-party decision-making. But,

importantly, the decision-making process in that instance was not alleged to have produced a disparate outcome based on race, disability, or other factors beyond the probationer's control.

In Hudgins, 292 Md. at 344, 438 A.3d at 929, a condition of probation mandated that the defendant "work with the State Police until there was satisfaction for what he was charged with, until the State Police were satisfied that he had worked out for what he was charged with." The objection to the condition was that the language was allegedly so generic or vague as to render the condition of probation unenforceable. See id. at 347, 438 A.2d at 930. We rejected the contention, stating "there can be little doubt that [the defendant] understood the" meaning of the condition of probation, as it plainly meant that he must supply the State Police with information "reasonably available to him concerning criminal activity of others[.]" Id. at 349, 438 A.2d at 931. We recognized, though, "that a probation requirement may be so amorphous that it is not reasonable to say that the defendant's complained of action was regulated by the standard of conduct imposed by the sentencing judge, thus rendering the penalty inherently incapable of enforcement." Id. at 348, 438 A.2d at 931.

Unlike with a no-suspension condition, the defendant in Hudgins would have been aware of the action he was required to take to comply with the condition of probation. The defendant in Hudgins would have known that he was required to take action, *i.e.*, engage in conduct, to supply a law enforcement officer with sufficient information concerning

- 8 -

criminal activity until the officer found his effort satisfactory.[5]  Although the defendant could not control the officer's decision as to whether his conduct was satisfactory, the condition was clear as to what was required of the defendant.  With school suspensions, that is not the case.  Two students may engage in the very same conduct and based on the discretion of school officials one child may receive a suspension while the second may not for reasons totally unrelated to either child's conduct.

The Majority's rationale seems to be that because Frederick County school regulations set out what conduct may potentially result in a suspension, a child is on notice to avoid all such conduct and the fact that some students may be suspended while others are not does not mean that the condition of probation is too vague to be enforceable.  See Maj. Slip Op. at 28-29.  In my view, in addition to a juvenile not being able to tell what conduct will actually result in a suspension, this sets too high a bar for children with respect to conduct that may result in a violation of probation.  Under Frederick County Reg. No. 400-08(II)(F)-(J), conduct that may qualify for an in-school suspension includes using disrespectful language, gambling, disruptive cell phone use, unauthorized computer use,

---

[5]Although the Majority does not mention this type of condition of probation, there are cases in which probationers have been ordered to successfully complete certain programs.  The decision-making process, at least in terms of successfully completing a specific program, such as an alcohol or substance abuse rehabilitation program, would have definitive criteria by which a probationer's participation in the program could be assessed.  Stated otherwise, assessing whether the probationer successfully completed a program would not be an entirely discretionary determination but rather would be based on set criteria.  Probationers who are required to participate in a program as a condition of probation will know that their performance will be deemed satisfactory or unsatisfactory and will have definite, set guidelines to follow.  By contrast, a juvenile has no notice of whether the juvenile will indeed be the individual whom a school will begin suspension proceedings against.

class cutting, leaving campus, misbehavior on a school bus, defiance of authority, setting a false fire alarm, smoking cigarettes, cheating, and plagiarism. Any of this conduct at the discretion of school officials may result in an in-school suspension and, under a no-suspension condition of probation, would *per se* constitute a violation of probation. In other words, conduct as such as cheating on a test or smoking a cigarette in school could result in a juvenile being suspended and found in violation of a probation. Although the consequences for any violation of probation depend on the gravity of the violation, undeniably, there is conduct that may result in a suspension from school but which should not automatically result in a violation of probation.[6]

Nonetheless, the Majority concludes that school rules are spelled out and available to a juvenile and, as such, the juvenile would be aware of the conduct that could get the juvenile in trouble, *i.e.*, suspended, and found in violation of probation. See Maj. Slip Op. at 30-31. That may be true. Importantly, though, it is the school's response to the conduct—not whether the juvenile engages in conduct that violates school rules—that determines whether a suspension will be imposed and hence whether there will be a violation of probation or not.[7] The problem is that the requirement that a juvenile have no

---

[6]The Majority states that "[a] school suspension does not automatically result in a violation of probation, because whether a violation of a condition of probation occurred is a question of fact to be determined by the juvenile court." Maj. Slip Op. at 32 (citation omitted). This observation is of no consequence, though, because, in the event of a no-suspension condition of probation, the sole question of fact to be determined by the juvenile court is whether the juvenile incurred a suspension.

[7]The Majority states that "[w]e are unaware of any Maryland appellate case that considered a condition of probation, subject to clear and definite rules of conduct, to be vague." Maj. Slip Op. at 30 n.19 (citations omitted). Again, this comment does not take

suspensions gives the juvenile no notice and little control as to what conduct will actually result in a violation of probation.

The Majority's conclusion that "[w]hether a suspension was arbitrarily or capriciously imposed against a student based on race, disability, or other factor, d[oes] not bear on the vagueness of the no-suspension condition of probation" and is a fact to be determined by a juvenile court in deciding whether "a violation of a condition of probation resulted from factors beyond the control or fault of a student[,]" Maj. Slip Op. at 35, establishes a difficult if not impossible standard for a juvenile to meet and will cause violation of probation proceedings to unnecessarily become mini-trials concerning the behavior and motivation of school officials. The focus of a juvenile violation of probation proceeding should be to determine whether the juvenile has engaged in conduct that violates probation, not whether the juvenile has been wrongfully suspended or the subject of disparate or inappropriate treatment. Allegations of disparate or unequal treatment are difficult to prove even in protracted civil trials involving extensive discovery, including interrogatories, the production of documents, and depositions, etc., and often expert testimony, and will be nearly impossible for a juvenile to establish within the confines of a violation of probation hearing.

In my view, rather than imposing as a condition of probation that a juvenile have no suspensions, a juvenile court should impose a condition of probation that requires a

---

into account that, with a no-suspension condition of probation, it is not the student's conduct that ultimately determines whether a violation of probation will occur, but rather it is the decision of a school official as to whether or not a suspension is imposed that determines the basis of an alleged violation of probation.

juvenile to notify a probation officer of any suspension, *i.e*., a notice of suspension condition of probation. This is similar to the type of condition imposed for adults and juveniles with respect to arrests. As a condition of probation, probationers are required to obey all laws and to report any arrests to a probation officer. If a similar condition requiring the reporting of a suspension were imposed in juvenile cases, a probation officer would have the ability to pursue either a violation of probation or the modification of a probation order based on the conduct underlying the suspension. The circumstance that the juvenile had been "suspended" would not by itself constitute an automatic or *per se* violation of probation. Under this type of probation condition, a juvenile's conduct would form the basis for determining a violation of probation as opposed to an inquiry into whether the suspension was arbitrarily or capriciously given for reasons beyond the juvenile's control or fault.

With a condition requiring that a juvenile report any suspension, depending on the conduct at issue, a probation officer would be free to institute a violation of probation or in the alternative under Maryland Rule 11-423(a),[8] in the absence of the allegation of a

---

[8]Maryland Rule 11-423(a) provides in relevant part:

**(a) Revisory Power.**

(1) *Authority*. The court may modify or vacate an order if the court finds that action to be in the best interest of the respondent or the public.

(2) *On Motion*. The court may exercise its authority under subsection (a)(1) of this Rule on motion of any party. A motion shall state with particularity the grounds on which the relief is requested. The court may grant or deny the relief, in whole or in part, without a hearing.

violation of probation, a juvenile court could review the conduct underlying the suspension and determine whether the juvenile's probation order should be modified.  In this manner, this Court and the Maryland justice system could accomplish the same goal as a no-suspension probation condition and take a step forward in fulfilling the principle of equal justice under law in juvenile delinquency cases.

For the above reasons, respectfully, I dissent.

---

(3) *Own Initiative*. The court may exercise its authority under subsection (a)(1) of this Rule on its own initiative.  If it proposes to do so, the court shall notify the parties of its intent and inform them of the right to respond and request a hearing within 10 days.  The court may not modify or vacate an order earlier than 10 days after the issuance of the notice.  If a timely request for a hearing is made, the court shall conduct a hearing.

(4) *On Recommendation*. The court may exercise its authority under subsection (a)(1) of this Rule on written recommendation to the court by the appropriate governmental agency exercising supervision or custody of the respondent.  The governmental agency making the recommendation shall (A) notify the parties of the recommendation and provide a copy of the recommendation to the parties, (B) inform the parties of the right to respond and request a hearing within 10 days from the date the notice was sent, and (C) provide a copy of the notice and recommendation to the court, accompanied by a statement of the date that notice was sent.  A response or request for a hearing shall be filed with the clerk.  The court may not act on the recommendation earlier than 10 days from the date that notice is issued, unless the parties consent in writing to the entry of an order implementing the recommendation.  If a timely request for a hearing is made, the court shall conduct a hearing.

**Committee note:** This Rule is not intended to preclude a governmental agency from making a recommendation in writing in advance of a scheduled hearing or on the record in a court proceeding.